

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_Anthony Blackse_

_(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)_

-against-

_New York City Transit Authority_
_Amalgamated Transit Union Local 726_

_(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)_

**Complaint for Employment Discrimination**

Case No. **CV 23-775**
_(to be filled in by the Clerk's Office)_

Jury Trial:    ☑ Yes    ☐ No
_(check one)_

Gonzalez, J.
Reyes, M.J.

## I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.



| | |
|---|---|
| Name | Anthony Bedno |
| Street Address | 91 DeKalb Avenue Apt # 11GA |
| City and County | Brooklyn County of Kings |
| State and Zip Code | New York 11201 |
| Telephone Number | 917-806-8412 |
| E-mail Address | ABEDNE4226@GMAIL.COM |

### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1



| | |
|---|---|
| Name | New York City Transit Authority |
| Job or Title (if known) | NYCTA |
| Street Address | 130 Livingston Street, 12th floor |
| City and County | Brooklyn, County of Kings |
| State and Zip Code | New York 11201 |
| Telephone Number | 718-330-1234 |
| E-mail Address (if known) | |

Defendant No. 2

| | |
|---|---|
| Name | Amalgamated Transit Union Local 726 |
| Job or Title (if known) | ATU Local 726 |
| Street Address | 3952 Amboy Rd |
| City and County | Staten Island, New York County of Richmond |

State and Zip Code _New York 10308_

Telephone Number _718-967-8130_

E-mail Address _____

(if known)

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

Name _Yukon Depot_

Street Address _2140 Yukon Avenue_

City and County _Staten Island  County of Richmond_

State and Zip Code _New York 10314_

Telephone Number _349-654-2565_

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

   *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

   *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☒    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

   *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

3

☐ Other federal law *(specify the federal law)*: *Title VII of the Civil Rights Act of 1964; 42 US Code § 2000 et Seq as attached*

☒ Relevant state law *(specify, if known)*: *New York State Human Rights Law; New York Executive Law § 290, et Seq as attached*

☒ Relevant city or county law *(specify, if known)*: *New York City Human Rights Law, NYC Administrative Code § 8-101, et Seq as attached*

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☒ Termination of my employment.

☐ Failure to promote me.

☒ Failure to accommodate my disability.

☒ Unequal terms and conditions of my employment.

☒ Retaliation.

☒ Other acts *(specify)*: *Opposed discrimination / Retaliation; failure to reinstate*

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
*** See Attached ***

4

C.    I believe that defendant(s) *(check one)*:

☒    is/are still committing these acts against me.

☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race  Black (African-American)

☒    color  Black

☒    gender/sex  Male, Sexual Orientation LGBTQ+ Community

☐    religion  _____

☐    national origin  _____

☐    age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☒    disability or perceived disability *(specify disability)*  Post Traumatic Syndrome Disorder

E.    The facts of my case are as follows.  Attach additional pages if needed.

** See attached **

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

5

### IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

_1/10/2022  Acknowledgement date  1/13/22_

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* _1/9/2022_

_Issuance date 10/25/22  Postage date, 10/31/22  I received it on 11/9/2022_

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

### V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

_* * See attached * *_

6

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _1/30_, 20_23_

Signature of Plaintiff _____

Printed Name of Plaintiff _____ Anthony Kadow _____

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

FILED
U.S. DISTRICT COURT E.D.N.Y.

JAN 30 2023 ★

BROOKLYN OFFICE

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/25/2022

**To:** Anthony Bledsoe
7 Dekalb Avenue
Apt 16A
Brooklyn, NY 11201

Charge No: 16G-2022-01006

EEOC Representative and email:   Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera10/25/2022

Timothy Riera
Acting District Director

Cc: **Amalgamated Transit Union**
**Attn: Local 726**
**3948 Amboy Road**
**Staten Island NY 10308**

Please retain this notice for your records.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 3 0 2023 ★

BROOKLYN OFFICE

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 10/25/2022

**To:** Anthony Bledsoe
7 Dekalb Avenue
Apt 16A
Brooklyn, NY 11201

Charge No: 16G-2022-01026

EEOC Representative and email:    Holly Shabazz
S/L Program Manager
HOLLY.SHABAZZ@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera10/25/2022

Timothy Riera
Acting District Director

Cc: **NYC Transit Authority**
**Attn: Legal Department**
**130 Livingston Street**
**12th Floor**
**Brooklyn NY 11201**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 16G-2022-01006 to the District Director at Timothy Riera, 33 Whitehall St 5th FloorNew York, NY 10004.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

ANTHONY BLEDSOE,

Plaintiff,

-against-


COMPLAINT


NEW YORK CITY TRANSIT AUTHORITY and

AMALGAMATED TRANSIT UNION LOCAL 726,

Defendants.

-----------------------------------------------------------------------x


Plaintiff ANTHONY BLEDSOE, appearing in this action pro se, hereby alleges as and

for his Complaint, 1 the following:


JURISDICTION AND VENUE


1. This action is brought for Defendants' discrimination against Plaintiff, in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the American With

Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq., the New York State Human

Rights Law, N.Y. Executive Law § 290, et seq., and the New York City Human Rights Law,

N.Y.C. Administrative Code § 8-101, et seq.

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331,

because this action arises under the laws of the United States, and pursuant to 28 U.S.C. § 1367,

because the claims asserted under state law are so related to those over which the Court has

original jurisdiction that they form the same case or controversy.

---

1 This Complaint was prepared with the assistance of the City Bar Justice Center's Federal Pro Se Legal Assistance Project.

3. Venue is appropriate in the Eastern District of New York because a substantial part of the acts or omissions giving rise to the claims occurred in this district. 28 U.S.C. § 1391(b)(2).

PARTIES

4. Defendant New York City Transit Authority ("NYCTA") is a public benefit corporation that operates public transportation in New York City. Its headquarters are located at 130 Livingston Street, 12th Floor, Brooklyn, New York 11201.

5. Defendant Amalgamated Transit Union Local 726 ("ATU Local 726") "is the largest transit union in North America" and "represents operators, mechanics and other titles of the various bus companies." Its headquarters are located at 3952 Amboy Rd., Staten Island, New York 10308. During Plaintiff's employment with Defendant NYCTA, he was a member of ATU Local 726.

6. Plaintiff Anthony Bledsoe is an African American male who identifies as a member of the LGBTQ community. Plaintiff resides at 7 DeKalb Ave., 16A, Brooklyn, NY 11201.

FACTS

7. During plaintiff's employment, Defendants subjected him to unlawful discrimination based upon his African American race, Black color, sexual orientation, and mental health related disability.

Plaintiff suffers from a mental-related disability caused by a homophobic attack he endured while performing his job duties for Defendant NYCTA. As outlined below, plaintiff's mental health condition was exacerbated by the discriminatory and retaliatory treatment to which he was subjected by Defendants during the relevant time period herein.

8. When Plaintiff engaged in protected activity by complaining about the discrimination and harassment to which he was subjected, Defendant NYCTA unlawfully retaliated against him by denying him reasonable accommodations, available overtime opportunities, and the ability to return to work despite his full compliance with all directives. Ultimately, Defendant NYCTA

placed Plaintiff "out of service" and banned him from MTA property. On February 4, 2022, Plaintiff was terminated.

9. On July 28, 2014, Plaintiff was hired by Defendant NYCTA as a Bus Operator in Staten Island. Throughout his seven-year employment tenure with Defendant NYCTA, Plaintiff performed his job duties in an exemplary manner.

10. On January 29, 2021, Plaintiff was assaulted by a passenger while operating Bus #8577. During the incident, which occurred at the Eltingville Transit Center in Staten Island, the assailant used anti-gay slurs and profanity towards Plaintiff and threatened to "shoot [Plaintiff's] faggot ass the fuck up." The assailant ended the homophobic attack by threatening to "shoot" Plaintiff the next time he saw him at the Staten Island Ferry Terminal. The assailant also indicated that if he could not attack plaintiff himself that he would send his friends and/ or relative to commit the assault. This incident caused Plaintiff to suffer extreme mental distress.

11. At the time of the assault, the Eltingville Transit Center was staffed by Service Line Dispatchers ("SLD's") Ventimiglia and Padilla. SLD Padilla radioed in the incident and informed Defendant NYCTA of police presence on bus #8577. The departments –Bus Command Center ("BBC") Console ("Console") and Bus Track ("Bus Track") are interconnected through the radio/ communication systems and have access to on-the-road activity. Bus Track directed Plaintiff to "go dark" and "drop-off only."

12. On January 30, 2021, as Plaintiff was pulling into the Staten Island Terminal, a man, who Plaintiff believed to be an ordinary passenger, rushed to the front of the bus that Plaintiff was operating. Plaintiff panicked as the man obstructed Plaintiff's view and prevented Plaintiff from ensuring a safe stop. Plaintiff thought it was the assailant's friend or relative that he said would do bodily harm to Plaintiff and kill him. His sensitivity was heightened and this incident triggered Plaintiff's Post Traumatic Stress Disorder ("PTSD"). Plaintiff had already been brutally beaten twice in his life and was first diagnosed with PTSD in or about November 2011.

13. On January 30, 2021, the man who stood in the pathway for passengers flashed what appeared to be a badge but Plaintiff could not see the badge clearly and asked the man to identify himself. The man displayed a faded identification card; however, it was difficult for Plaintiff to make out the photograph and name. Accordingly, Plaintiff again asked the man to identify himself by name. The man identified himself as Sorrento.

14. When Plaintiff asked Sorrento for his pass number, Sorrento refused to provide it. Plaintiff then called ATU Local 726 Representative Thomas Mason ("Mason") to report the situation, and asked if the union could start the paperwork for Plaintiff to go on IOD (injury on duty) since the assault happened less than 22 hours earlier. Sorrento then asked Plaintiff for his pass number. Plaintiff asked that Sorrento provide him with the pass number and then Plaintiff would gladly provide him with his. Subsequently, Sorrento advised Plaintiff that he was conducting a "observation ride" due to alleged reports of unprofessionalism and reckless driving. Sorrento said Plaintiff passed the observation ride but then issued a violation to Plaintiff for "failure to comply" when Plaintiff appropriately refused to provide his pass number without proper identification.

15. Later that day, Plaintiff received a voicemail from Executive Board Transportation Member, Senior Bus Operator Paul LaPolla ("LaPolla"), who was also Plaintiff's Union Representative. When Plaintiff returned the call, LaPolla informed him that Defendant NYCTA was placing him "out of service" until February 11, 2021. When Defendant NYCTA places an employee "out of service," it is essentially suspending said employee unless the employee is assigned to "other duties."

16. Plaintiff attempted to report to LaPolla the incidents that transpired on January 29, and January 30, 2021, and requested that he be removed and placed on IOD. Plaintiff expressed that he needed assistance with filing incident reports; however, LaPolla failed to assist Plaintiff. LaPolla then advised Plaintiff to see Assistant General Manager Mike Cilmi ("Cilmi") on the following Monday, February 1, 2021.

17. Significantly, Defendant ATU never provided Plaintiff with a resolution to the two incidents. Defendant ATU also failed to communicate the details of the January 29, 2021, assault to the necessary parties and Plaintiff never received any communications from the Crisis Management Department.

18. On February 3, 2021, Plaintiff spoke with ATU Local 726 Vice President George Botts ("Botts"), who assured Plaintiff that the incident with Sorrento could not result in NYCTA "holding [Plaintiff] out" because it was an operational issue. Thereafter, Plaintiff, accompanied by Botts, met with Cilmi. During the meeting, for the third time, Plaintiff described the traumatic events that transpired on January 29, 2021.

19. Both Botts and Cilmi refused to review video surveillance footage of the incident and claimed that nothing could be done. Defendants further refused to label the incident as an assault despite the fact that the violent passenger was removed from the bus by police officers.

20. Instead of taking appropriate action, Defendants placed the blame on Plaintiff for allegedly failing to timely report the incident, which was inconsistent with the facts. Plaintiff had immediately reported the incident, which was radioed in by SLD Padilla, and therefore, Plaintiff was not required to submit a separate incident report.

21. While refusing to watch video surveillance footage of the January 29, 2021, incident, Defendants examined the video footage of the January 30, 2021, incident between Sorrento and Plaintiff. Instead of providing Plaintiff with support, Defendants baselessly used said footage to escalate the disciplinary charge from "failure to comply" to "continued observed behavior of misconduct." Footage was later destroyed when defendants ATU local 726 and NYCTA members of management officials, put the bus back in "passenger service", erasing the events that truly took place on January 30, 2022, that would indicate that Sorrento was the aggressor –both with plaintiff and with law enforcement. This also made it the second time that a non-Black, non-Homosexual member of manager refused and failed to properly identify himself throughout Plaintiff's eight years of employment.

22. Notwithstanding the earlier reassurance Plaintiff received from Botts, Defendant NYCTA placed Plaintiff "out of service" based upon pretextual accusations of "continued observed behavior of misconduct." Defendant NYCTA required Plaintiff to turn in his badge and escorted him off the property.

23. On February 11, 2021, Plaintiff appeared before Arbitrator Martin Scheinman ("Scheinman") in connection with the pretextual charges issued by Defendant NYCTA. During the arbitration hearing, Plaintiff engaged in protected activity by reporting the ongoing discrimination to which he was subjected by the general public, as well as Defendant NYCTA's management, based upon his race and sexual orientation.

24. During the arbitration hearing, Plaintiff further explained that the January 29, 2021, incident led him to have an alarming response when abruptly approached by Sorrento the following day. Nevertheless, Defendant NYCTA ignored Plaintiff's discrimination complaints and issued baseless infractions against him, which concerned incidents that occurred more than

one year prior to the pandemic.

25. Notwithstanding his seven-year exemplary performance record, Defendant NYCTA
requested that the Arbitrator terminate his employment or otherwise demote him to a lower
position. Defendant NYCTA's requested punishment of Plaintiff far exceeded penalties imposed
on other similarly situated non-Black non-homosexual colleagues.


26. Arbitrator Scheinman, who did not appear to be impartial, concluded that Plaintiff
should be removed from passenger services and required him to attend sessions with a therapist
for his mental health. The Arbitrator's decision further distressed Plaintiff. Defendants were also
ordered to take an incident report of the assault that occurred on January 29, 2021. Decision of arbitrator
does not follow policy in terms of what is procedural or protocol. As stated operators that are assaulted
are placed on IOD and are paid for up to two (2) years. Operators are not subject to being placed in "non-
public facing duties" or "other duties". Non- Black, non- Homosexual male gendered operators were
never forced to work yet the terms and conditions of Plaintiffs employment were different when he was
assaulted.

27. On February 15, 2021, as a result of the Arbitration, Plaintiff reported to work and
was assigned to "other duties."

28. On February 16, 2021, Plaintiff requested a reasonable accommodation for an
assignment to the overnight shift, so that he could attend the required therapy sessions during
regular business hours. In addition, it was difficult for Plaintiff to travel to work at the designated
hours especially when a global pandemic had been declared. Significantly, Defendant NYCTA
baselessly denied Plaintiff's request and gave him the option to work 0800-1700 hours or 0800-until.
Plaintiffs was on Vacation Relief and the hours of his particular run had to match his hours work: If the
run paid 8 hours then Plaintiff had to work said hours. If the run paid 12 hours plaintiff had to work said
hours. It was also conveyed to Plaintiff at the time his request was denied, that he could simply "make
up" the hours of the back end of his tour. Businesses were operating on a modified schedule, resulting in
early closings. Hours of operations were limited. Bus scheduled were operating on close to a curtailment
schedule due to amount of Bus Operators that were getting ill and dying. A 12 –hour day would have
turned into a 23-hour day considering the time that I would have taken Plaintiff to make up the hours of
his tour and attend his

therapy sessions. The 56th Governor of New York State, Former Governor Andrew M. Cuomo closed the

subway system at 0100hrs in response to the global pandemic, which left Plaintiff stranded.

29. Defendant NYCTA communicated to LaPolla that their purported refusal of

Plaintiff's request was due to the lack of supervision. Plaintiff then shared this information with

Botts, who in turn instructed Plaintiff to provide written documentation of his scheduled therapy

sessions so that Botts could forward the information to Union Attorney Amelia K. Tuminaro

("Tuminaro") and Scheinman.

30. During a subsequent meeting among Plaintiff, Cilmi, and LaPolla, Cilmi claimed that

the shift options were based upon Defendant NYCTA's operational needs and abruptly ended the

meeting. Plaintiff found Defendant NYCTA's reasoning in denying his request to work the

overnight shift unusual as Defendant NYCTA's deports run 24 hours per day.

31. On February 18, 2021, Plaintiff attended his first therapy session with Christopher

Labbate, LMHC, CASAC-T.


32. Plaintiff attended the therapy sessions for non-anger management related and trauma issues.

Christopher Labbate is a licensed mental health counselor ("Licensed Mental Health

Counselor"). The abbreviation "CASAC-T" stands for credentialed alcohol and substance abuse

counselor trainee. Mr. Labbate's area of practice was alcohol and substance abuse only. Plaintiff follow

through with complying with the orders of mandate, even though practices are not in alignment with what

is protocol and according to policy when a Bus Operator is assaulted.

33. On February 22, 2021, Mr. Labbate provided Plaintiff with written documentation

setting forth the date and times of Plaintiff's appointments. Plaintiff then sent a copy of the letter

to Botts, as requested.

34. On February 25, 2021, during a meeting with LaPolla, Climi, and General

Superintendent ("GS") Nick Sansevero ("Sansevero"), NYCTA management rejected Plaintiff's

scheduled shift change (for a second time), citing purported operational needs and their right to schedule

Plaintiff's hours as they saw fit. Despite being ordered by Scheinman to attend therapy sessions, Plaintiff

was denied his reasonable accommodation request, which would have allowed him to attend said

sessions, by Defendant NYCTA.

35. Notably, on that same day, nearly one month after the traumatizing homophobic

attack that Plaintiff endured, and two weeks after Scheinman's Order, Defendants asked Plaintiff to complete an incident report in connection with the January 29, 2021, assault.

36. On March 3, 2021, Botts advised Plaintiff to find a clause that required Defendant NYCTA to afford him the accommodation for his therapy appointments. Botts and Mason suggested that Plaintiff request an emergency hardship transfer out of the Staten Island Division all together if the shift was causing difficulties in getting to work.

37. On March 8, 2021, SLD Padilla and Plaintiff sat down to memorialize the incident report in connection with the homophobic assault that occurred January 29, 2021.

38. On March 11, 2021, Plaintiff learned that Defendant NYCTA allowed at least four other similarly situated non-African American males – all of whom were heterosexual – to work the shift 0000-0800 hours, which was the same shift that Plaintiff had requested as an accommodation for transportation and therapy, which request had been denied.

39. On April 12, 2021, Plaintiff met with Botts and reiterated his reasonable accommodation request to work the overnight shift. Botts discouraged him from filing a grievance stating, "They [NYCTA management] just don't like you" and advised Plaintiff that he would be fired if he filed a grievance.

40. Botts further explained to Plaintiff that Defendant NYCTA management did not trust that Plaintiff would do the work during the overnight shift and again directed Plaintiff to find a clause to persuade Defendant NYCTA to grant him the request to work the overnight shift.

41. Significantly, Plaintiff had previously worked the overnight shift and was not required to cite to a special clause in order to be granted said shift. At the Yukon Depot, there was an obvious need for employees to work the overnight shift.

42. Defendant NYCTA allowed less senior employees, who were non-African American and heterosexual, from neighboring depots to travel to the Yukon Depot to work the overnight shifts while denying the same to Plaintiff due to its discriminatory and retaliatory animus against Plaintiff, based upon his race, sexual orientation, disability, as well as his complaints of discrimination.

43. Defendant NYCTA maintains a strict seniority policy. However, Defendant disregarded said policy with respect to Plaintiff's terms and conditions of employment.

44. On April 13, 2021, Mr. Labbate submitted a medical evaluation of Plaintiff, in which he concluded that Plaintiff did not suffer from a mental illness or disorder that would prevent him from performing his regular Bus Operator job duties and recommended that Plaintiff be returned to full duty status.

45. On April 15, 2021, Arbitrator Scheinman received Mr. Labbate's medical evaluation and scheduled a second Arbitration for May 11, 2021.

46. On May 10, 2021, Defendant ATU attorney Ms. Tuminaro and Botts met with Plaintiff to discuss the false complaints made by straphangers and to discuss how NYCTA members of management falsified documents and inserted bogus infractions in Plaintiff's NYCTA personnel file. In meeting Plaintiff was also informed that he was a "Hit List". Ms. Tuminaro also requested that Mr. Labbate provide a supplemental letter, which was provided. Mr. Labbate's supplemental letter again recommended that Defendant NYCTA return Plaintiff to full duty status as a Bus Operator.

47. Upon Plaintiff's leaving the meeting, he noticed members of management "High-fiving" a non-Black, non-Homosexual male gendered bus operator, Sergio Carrasquillo, telling him that he's going to have "the best two years of his career". Carrasquillo was taken off the bus that day due to an assault-related issue. Additionally, he was placed on IOD and paid for up to two (2) years.

48. On May 11, 2021, Scheinman, who is not certified or trained as a mental health professional, disregarded Mr. Labbate's medical evaluation and gave his own prognosis and diagnosis to Plaintiff. Scheinman then ordered that Plaintiff continue to be held out of service, in a non-public facing position for an additional 90 days. Scheinman's decision was in furtherance of Defendant NYCTA's discriminatory and retaliatory animus against Plaintiff, who had satisfied terms and the conditions of being reinstated set forth by the arbitration and arbitrator Scheinman, held on February 11, 2021. Plaintiff was afraid that he was going to be terminated and used his vacation time to satisfy the mandate.

49. Plaintiff asked Defendant ATU to file motions and a grievance to have Scheinman removed and replaced and asked to file a grievance on the basis of the arbitration changing the terms and conditions of his employment and to be restored to full duty as a bus operator. They would not do it.

50. Plaintiff also asked Defendant ATU to file a grievance on the management and the

NYCTA on the basis of prohibiting him to be reinstated to full duty as a bus operator. They refused.

51. The Transit Authority was in dire need of workers and were "calling" people out of retirement to be reinstated as active bus operators. This was attributed to the pandemic, which caused many employees to be out sick or dying. Plaintiff satisfied the mandate and yet defendants ATU local 726, NYCTA, NYCTA members of management and Arbitrator Schienman would not reinstate Plaintiff back to full duty— as a bus operator in passenger service.

52. On July 19, 2021, Plaintiff met with Botts, Administrative Hearing Officer David Cinamon ("Cinamon"), and Labor Relations Representative Lloyd ("Lloyd"). The purpose of the meeting was to discuss the grievance Plaintiff filed. In the meeting, Plaintiff reported the Defendants' improper handling of the report in connection with the homophobic attack he endured in January 2021, why he could not come into work on his Regular Days Off ("RDO"), why he was blocked out of doing overtime and why he had to use his vacation time to satisfy the mandate . Plaintiff also explained in detail the discrimination and retaliation he faced when requesting a reasonable accommodation for a shift change to attend the ordered therapy sessions and due to the difficulties he had traveling to work at the hours he was given, while in a pandemic.

53. Significantly, Lloyd disregarded Plaintiff's complaints and claimed that the purpose of the meeting was solely to discuss vacation time. Lloyd then stated that Plaintiff could file a formal discrimination claim with Defendant NYCTA's internal Equal Employment Opportunity ("EEO") Office and falsely claimed that Plaintiff would waive his rights to file any claims with external agencies if he decided to proceed with the internal EEO complaint.

54. On August 10, 2021, Mr. Labbate provided an additional letter recommending that Defendant NYCTA return Plaintiff to full duty status as a Bus Operator.

55. On August 12, 2021, at the third Arbitration hearing, Scheinman unwarrantedly disciplined Plaintiff for expressing his frustration with Defendants' failure to ameliorate his complaints of discrimination by extending his time "out of service" for an additional 30 days. Scheinman advised Plaintiff that Defendant NYCTA would reinstate him to Bus Operator after 30 more days. Scheinman's decision was in support of Defendant NYCTA's discriminatory and retaliatory animus against Plaintiff.

56. On September 14, 2021, Scheinman ordered Defendant NYCTA to reinstate Plaintiff

to Bus Operator, 152 days after the medical determination was made by Christopher Labbate and

215 days after many failed attempts by both Defendants NYCTA, ATU, as well as the arbitrator,

to contact the straphangers who made the bogus complaints. Scheinman also ordered Defendant

NYCTA to return Plaintiff's vacation time, which Defendant NYCTA failed to do.

57. Significantly, Scheinman displayed bias and acted unprofessionally by calling

Plaintiff "ungrateful" for complaining about the disparate treatment to which he was subjected in

the terms and conditions of his employment as compared to similarly situated non-African

American heterosexual colleagues. He also scolded Plaintiff for expressing concern to Defendant

ATU Local 726 about his rulings and how they were discriminatory in nature and intent.

Defendant ATU Local 726 representatives were telling the arbitrator everything that Plaintiff

expressed to them, unbeknownst to Plaintiff.  Scheinman stated to Plaintiff that he did not have a case he

could put in the New York State Division of Human Rights against the New York City Transit Authority.

Arbitrator Scheinman then expressed to Plaintiff that perhaps he should demote him for 3 years and then

terminate Plaintiff employment once they learn of the decision of the New York State division of Human

Rights.

58. On September 20, 2021, Plaintiff was scheduled to report to the Medical Assessment

Center/ Occupational Health Services ("MAC") to be cleared to return to work as a Bus

Operator. However, the MAC declined to clear him for duty because the G46 was improperly

filled out by Defendant NYCTA management officials. The MAC/ Occupational Health Services

manager/ director, Mr. Charles Scott informed Plaintiff that he had spoken to Defendants NYCTA and

ATU and instructed them, in regard to how the G46 was to be filled out. It was also expressed by Mr.

Scott that an explanation detailing why Plaintiff had been out on restrictive duty was to accompany the

G46. Members of management did neither of the two, resulting in the MAC's decision not clear

Plaintiff to return to service. Plaintiff was advised to obtain the correct paperwork from

Defendants and report back to the MAC in order to obtain medical clearance.

59. Despite all of Plaintiff's efforts and MAC's refusal to clear him to return to full duty,

GS Arias ordered Plaintiff to report to the Zerega Bus Facility ("Zarega") on the following day,

without medical clearance, the fit-for-duty certificate. The MAC/ Occupational Health Services

had ordered and instructed Plaintiff to come back with a properly filled out G-46 and a detailed

explanation of why he was on restrictive duty for 200-plus days.

60. Plaintiff's report time for Zarega was for 0700 hrs on September 21, 2021. He was

not yet medically cleared to go to the Zarega Bus Facility. At 6:28 a.m. Plaintiff was feeling ill

and requested to use accrued vacation time ("AVA") or a vacation day ("VAD") for that day. SLD Spero

denied this request on the pretextual basis that GS Arias "wanted to stay within quota" and that General

Superintendent of Support ("GSS") GSS Francis had to approve the time off request when he arrived at

work at 9:00 a.m. This purported chain of command requirement was illogical and pretextual because

Plaintiff did not qualify to fit into quota due to his restrictions. Defendant NYCTA's policies and

procedures with respect to time off does not require a GSS to approve time off for an employee on

restricted duty.

61. The amount of bus operators that are allowed time off on a Vacation day is 7 on the

weekday and 5 bus operators are allowed on an AVA on a weekday. The number allowed for

operators to be off on a Vacation day is 6 on the weekend and 5 is the number of bus operator

that are to be off off on an AVA on the weekend. This rule pertains to operators that are in passenger

service. There is no quota for operators on restrictive duty. They are simply approved for the

day.

62. Plaintiff then attempted to contact Botts and LaPolla regarding the issue; however,

both failed to promptly respond. By 6:59 a.m., Defendant NYCTA informed Plaintiff that he was

deemed Absent Without Leave ("AWOL") and that he would be held out of service until

October 14, 2021. Defendant NYCTA's AWOL determination was made in furtherance of its

discriminatory and retaliatory animus against Plaintiff given that he had adhered to the policies

and procedures for time off requests by advising the Depot that he was not able to go to the

Zarega Bus Facility ("Zarega") because I was not medically cleared. Instead, Defendant

NYCTA and Management were instructed (by the MAC) to supply Plaintiff with the requested

information and a G-46 filled out to the specifications of Mr. Scott and bring it back to the MAC/

Occupational Health Services to get medical clearance.

63. The Bus Operator position is considered a "safety sensitive" position and therefore, as

per the collective bargaining agreement and DOT laws, Defendant NYCTA would never

disregard a physical evaluation by the MAC/ Occupational Health Services and obtaining a fit-

for-duty certificate, before allowing a Bus Operator to return to duty. Without said evaluation, Plaintiff was not cleared to report to Zarega for any re-qualifications/ classifications under the safety "sensitive position" Bus Operator. Scheduled retraining at the Zarega Bus Facility happens —post obtaining medical clearance and a fit-for-duty certificate.

64. On September 21, 2021, notably, Defendant ATU was aware that MAC had not cleared Plaintiff to report to Zerega, and therefore could not partake in any re-qualifications and re-certifications but failed to intervene. Later that day, Botts, who was scheduled to work, was not present at the depot, called Plaintiff and advised him to report to the Yukon Depot the next day, September 22, 2021.

65. On September 22, 2021, Plaintiff reported to the Yukon Depot and was issued a disciplinary citation, in which SLD Spero falsely alleged that Plaintiff refused to report to Zarega on September 21, 2021. While at the Yukon Depot, Plaintiff saw Botts and inquired why Botts failed to respond to Plaintiff's communications. Botts responded, "I don't have to pick up my fucking phone for you...You're not my fucking wife."

66. As a Union Representative, Botts had a duty to be available and to advocate for all Union members, including Plaintiff.

67. Plaintiff wrote a statement ("G-2") explaining to management that they sabotaged his efforts to become reinstated as a bus operator by having him go to the MAC and stay there in 84-85 degree weather for 4-5 hours in the heat, knowing that the MAC would reject the G-46 and deny him medical clearance due to management's inability to properly fill out the G-46 and willfully refusing to submit the requested detailed explanation. It is also in the MTA/ New York City Transit Rules & Regulations code of ethics book, as to what is procedural and protocol, regarding the reinstatement of Bus Operators that are on restrictive duty.

68. Later in the day on September 22, 2021, Plaintiff met with SLD Spero, Cilmi, GS Arias, Mr. Francis, Jimmy Curran, Botts, and another unidentified man, who informed Plaintiff that he was being taken "out of service" for alleged insubordination. Defendant ATU representatives failed to intervene and advocate on Plaintiff's behalf. GS Arias then yelled out for security to escort Plaintiff off of the premises despite the fact that Plaintiff was not engaging in any misconduct or inappropriate behavior. Defendants' actions were in furtherance of their

discriminatory and retaliatory animus against Plaintiff based upon his protected classes and complaints of discrimination.

69. Subsequently, Plaintiff left a voicemail message for ATU International President John A. Costa ("Costa"), during which Plaintiff expressed his dissatisfaction with the representation he received from Defendant ATU in connection with Defendant NYCTA's decision to remove him from service. Defendants then scheduled an Arbitration in connection with the matter for October 14, 2021.

70. On September 30, 2021, Plaintiff received a letter from Wex Health, Inc., Defendant NYCTA's benefits provider, regarding "COBRA Continuation and other Health Coverage Alternatives." The letter explicitly stated, "You are receiving this letter because on 9/21/2021 you experienced an event of a/a Termination which constitutes a qualifying event under the Metropolitan Transportation Authority (MTA) group health plan(s) ("the plan")." Significantly, Defendants never informed Plaintiff that Defendant NYCTA terminated his employment and had failed to provide Plaintiff with any information regarding the status of his employment.

71. On October 14, 2021, Plaintiff reported to Union Hall in Staten Island for the scheduled Arbitration. After waiting approximately one (1) hour and forty-two (42) minutes, Defendants ATU local 726 informed Plaintiff and another African-American Bus Operator, that the Arbitrator canceled the remaining hearings for that day and rescheduled them for November 9, 2021. Notably, all of the Caucasian bus operators whose Arbitration hearings were scheduled for that day had their hearings. While on the way home, Plaintiff was informed that an Arbitration hearing would be scheduled for October 21, 2021.

72. On October 21, 2021, Plaintiff attended the Arbitration hearing in connection with his removal from service on September 22, 2021. However, the Arbitrator did not issue a written decision that day and claimed that said decision would be forthcoming.

73. On October 26, 2021, Plaintiff sent a text message to Botts inquiring about the status of the Arbitrator's decision; however, Botts failed to respond. Plaintiff also contacted Defendant ATU President Daniel Cassella ("Cassella"), who acknowledged Plaintiff's inquiry but did not provide a decision from the Arbitrator. The Amount of days a Bus Operator is given is determined by the by-laws of the specific labor union the individual is under and the CBA, collective bargaining agreement. Bus Operators are not suspended indefinitely. Treatment of Plaintiffs speaks to the discrimination that he

faced, regarding not receiving proper advocacy and representation like the non-Black, non-Homosexual male gendered bus operators received. Defendant ATU local 726 discriminatory practices are due to Plaintiff being Black, African-American, a member of the LGBTQ+ Community, who has PTSD. Plaintiffs did not receive any written correspondence from the arbitrator nor did he receive any information regarding the arbitrator's decision.

74. Plaintiff, having received no information about the outcome of the arbitration, retained the law firm of White, Hilferty & Albanese. Both Defendants The New York City Transit Authority and Amalgamated Transit Union Local 726 received a cease and desist letter from said law firm on November 1, 2021.

75. On November 4, 2021, Plaintiff again contacted Defendants regarding the Arbitrator's decision to no avail.

76. On November 12, 2021, Plaintiff again contacted Casella regarding the status of the Arbitrator's decision; however, Cassella failed to respond.

77. On November 22, 2021, NYCTA posted an "Access Denied" poster displaying my name and picture. The poster publicly stated, "The above individual is a suspended NYC Transit employee. If entry is attempted by this individual, IMMEDIATELY contact the NYC Transit Department of Security... and if, appropriate, the NYPD via 911." Evidently, Defendant NYCTA banned Plaintiff from MTA grounds.

78. Significantly, Defendant did not display "Access Denied" posters for Plaintiff's similarly situated non-African American heterosexual colleagues when they were removed from service. Typically, when an employee is taken out of service, they are required to surrender their passes and badges, but they are not denied access to MTA grounds nor are their photographs displayed for all NYCTA and MTA employees to see. Rather, Defendant NYCTA only takes such action when an employee has been terminated or is a threat to public safety. According to the NYCTA notification, Defendant NYCTA had not terminated Plaintiff's employment at that time.

79. Defendant NYCTA's actions were in furtherance of its discriminatory and retaliatory animus against Plaintiff based upon his African American race, sexual orientation, and disability, as well as his engagements in protected activity when he complained about the discrimination to which he was subjected. It was also due to Plaintiff having retained legal counsel.

80. In early January 2022, Defendants New York City Transit Authority and

Amalgamated Transit Union Local 726 received notification of Plaintiff's filing of verified complaints with the New York State Division of Human Rights and the U.S. Equal Employment Opportunity Commission (EEOC).

81. One Hundred forty (140) days into his suspension, Plaintiff had not received any written correspondence or decision from the Arbitrator in connection with Defendant NYCTA's decision to remove him from service based upon pretextual accusations of insubordination nor had Defendant NYCTA returned the vacation time that was owed to Plaintiff. Defendants had not contacted Plaintiff regarding his return to service or the status of his employment.

82. On or about February 8, 2022, 28 days after Defendants received acknowledgment of the filings of Plaintiff's complaints with the New York State Division of Human Rights and the EEOC, Plaintiff received written correspondence from Gladstein, Reif & Meginnis LLP, the Union's attorney, informing Plaintiff of his discharge from the NYCTA.

Plaintiff filed complaint with the New York State Division of Human Rights Pursuant to Executive Law Article 15 and with the U. S. Equal Employment Opportunity Commission, on The basis of being discriminated against on Race, Color, Sexual Orientation, Disability, Opposed Retaliation and Discrimination on January 10, 2022. Both agencies sent acknowledgements of said filings with a filing date of January 13, 2022 to Defendants, New York City Transit Authority ("NYCTA") and Amalgamated Transit Union Local 726 ("ATU local 726"). The U.S. Equal Employment Opportunity Commission ("EEOC'), issued a determination made by Acting Managing Director, Timothy Riera. Determination granted and issued Plaintiff the Notice of Right to Sue letters to sue defendants in U.S. District Court or in State Court. The issuance date was October 25, 2022. Written correspondence of said determinations were sent via Regular Mail, with a postage date of October 31, 2022. Plaintiff received said determination on November 2, 2022, whose address is 7 DeKalb Ave., 16A, Brooklyn, New York 11201.

83. Based on the foregoing, Defendants subjected Plaintiff to unlawful discrimination based upon his race, sexual orientation, and disability, as well as retaliation following his engagements in protected activity, as it chronicles the traumatic events and occurrences while being employed with the New York City Transit Authority ("NYCTA") and represented by Amalgamated Transit Union Local 726 ("ATU local 726"). It describes and details the treatment of a Bus Operator,

who was discriminated against by his employer and labor union because Plaintiff is an African-American,
Black, a member of the LGBTQ+ Community, who has PTSD and has been a victim of hate crime and
assault, while on duty.  Multi-Media, recordings, iPhone texts and video have been preserved and
archived to be used for evidentiary support and documentary evidence at the judge's request. Arbitrations,
meetings, and conferences that fall between the dates between July 10, 2018 and October 14, 2021 have
been recording and preserved for the submittal of this claim and for the judge –at the judge's request.
84. Defendants treated Plaintiff differently as compared to similarly situated
heterosexual, non-African American, non-disabled employees with respect to their terms and
conditions of employment. These actions of discrimination and retaliation substantially
interfered with Plaintiff's employment.
85. As a result of Defendant's unlawful discriminatory and retaliatory practices, Plaintiff
suffered significant financial harm, humiliation, outrage, and mental anguish for which he claims
compensatory damages.
86. Defendants violated the New York State Human Rights Law, N.Y. Executive Law §
296, et seq., the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., and the Americans with Disabilities
Act of 1990, 42 U.S.C. § 1201, et seq.


RELIEF REQUESTED


By reason of the facts and circumstances stated above, Plaintiff seeks the following relief:
Compensatory and punitive damages in the amount of $3,879,000 (3.879M), from both defendants
7,758,000.00 (7.758M) which equates to $129,000.00 — Plaintiff's salary prior to the homophobic
assault, for 30 years of service;  Reinstatement of Plaintiff's employment as a bus operator with The New
York City Transit Authority, with the seniority he would have had if he had not been wrongfully
terminated; Two weeks' vacation time, which was awarded to Plaintiff in the Arbitration held on
September 14, 2021; the sick time and vacation time that Plaintiff would have accumulated if he had not
Been wrongfully terminated; together with such other and further relief as the Court deems just and
proper.

who was discriminated against by his employer and labor union because Plaintiff is an African-American, Black, a member of the LGBTQ+ Community, who has PTSD and has been a victim of hate crime and assault, while on duty. Multi-Media, recordings, iPhone texts and video have been preserved and archived to be used for evidentiary support and documentary evidence at the judge's request. Arbitrations, meetings, and conferences that fall between the dates between July 10, 2018 and October 14, 2021 have been recording and preserved for the submittal of this claim and for the judge –at the judge's request. Plaintiff has the attendance records of all non-Black non-Homosexual male gendered bus operators and their respectable seniorities who were working overnight.

84. Defendants treated Plaintiff differently as compared to similarly situated heterosexual, non-African American, non-disabled employees with respect to their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Plaintiff's employment.

85. As a result of Defendant's unlawful discriminatory and retaliatory practices, Plaintiff suffered significant financial harm, humiliation, outrage, and mental anguish for which he claims compensatory damages.

86. Defendants violated the New York State Human Rights Law, N.Y. Executive Law § 296, et seq., the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201, et seq.


RELIEF REQUESTED


By reason of the facts and circumstances stated above, Plaintiff seeks the following relief:
Compensatory and punitive damages in the amount of $3,879,000 (3.879M), from both defendants 7,758,000.00 (7.758M) which equates to $129,000.00 — Plaintiff's salary prior to the homophobic assault, for 30 years of service; Reinstatement of Plaintiff's employment as a bus operator with The New York City Transit Authority, with the seniority he would have had if he had not been wrongfully terminated; Two weeks' vacation time, which was awarded to Plaintiff in the Arbitration held on September 14, 2021; the sick time and vacation time that Plaintiff would have accumulated if he had not Been wrongfully terminated; together with such other and further relief as the Court deems just and

Plaintiff humbly requests that the Court order and implement programs that will be substantive and significant in change as a means to check, monitor, empower and educate the internally flawed grievance process and the "ways and culture" of Defendants NYCTA and ATU local 726, that targets certain protective classifications and demographic groups within The New York City Transit Authority and Amalgamated Transit Union Local 726. I humbly ask that the installation of such programming be enforced by the courts, in The New York City Transit Authority and Amalgamated Transit Union Local 726, to combat the built-in discrimination, partiality and racism that exist within these organizations and governmental agencies currently today.

Dated: January __, 2023
Brooklyn, NY

_____

Anthony Bledsoe (Signature)

**FILED**
IN CLERK'S OFFICE
**U.S.** DISTRICT COURT E.D.N.Y.

★ JAN 3 0 2023 ★

BROOKLYN OFFICE

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300



NEW YORK NY 100

31 OCT 2022PM 6 L

FIRST-CLASS

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 10004 $ 000.57⁰
02 4W
0000360941 OCT 31 2022

11201-851864

Issuance Date 10/28/22
Postage U.s Postage Oct 10/3/22
Letter Coreispondence did nt
Come to my Area of Rottnry Unit
11/2/22

I received letter of Determination
in 11/2/22