UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANTHONY BLEDSOE,

               Plaintiff,

      v.

NEW YORK CITY TRANSIT AUTHORITY
and AMALGAMATED TRANSIT UNION
LOCAL 726,

               Defendants.

**MEMORANDUM & ORDER**

23-CV-00775 (HG) (JAM)

---

**HECTOR GONZALEZ**, United States District Judge:

    *Pro se* Plaintiff Anthony Bledsoe brings this action against his former employer, Defendant New York City Transit Authority ("NYCTA"), and his former union, Defendant Amalgamated Transit Union Local 726 ("Union" or "Local 726"). He alleges that he was discriminated against on the basis of his race, sexual orientation, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq. See* ECF No. 10 (Second Amended Complaint or "SAC").

    On April 17, 2023, Local 726 filed a pre-motion letter requesting a conference in anticipation of filing a motion to dismiss. ECF No. 8. On April 21, 2023, Plaintiff responded to the pre-motion letter, but did not substantively address any of the arguments raised in the Union's letter. ECF No. 10. The Court subsequently denied the Union's request for a conference and instead granted Plaintiff leave to file a second amended complaint.[1] *See* Apr. 25, 2023, Text Order. In that Order, the Court advised Plaintiff that Defendant's pre-motion letter

---

[1] After filing his original complaint on January 30, 2023, ECF No. 1, Plaintiff first amended his complaint on March 31, 2023. ECF No. 6.

"identifie[d] several likely legal deficiencies in the Complaint," and granted him permission "to file an amended complaint by May 23, 2023[,] to cure these alleged legal deficiencies if he is inclined to do so." *Id.* On May 23, 2023, Plaintiff made a request for additional time to file his SAC, ECF No. 16, which the Court granted, *see* May 24, 2023, Text Order. On June 6, 2024, Plaintiff filed the SAC. ECF No. 19. Thereafter, the instant motion followed. ECF No. 21.[2]

For the reasons set forth herein, the SAC is dismissed with prejudice as to Defendant Local 726, with the exception of Plaintiff's claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, or the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101 *et seq.*, over which the Court lacks jurisdiction.

## BACKGROUND

Plaintiff began working as a bus operator for Defendant NYCTA in July 2014. ECF No. 19 ¶ 9.[3] On January 29, 2021, a passenger verbally assaulted him, *id.* ¶ 10, and the next day he

---

[2]    Defendant NYCTA did not move for dismissal, but instead answered the SAC on July 27, 2023. ECF No. 29.

[3]    For the purposes of this motion, the Court accepts as true the well-pleaded allegations of the SAC, ECF No. 19, as well as the additional allegations raised by Plaintiff in his Opposition to the motion to dismiss, ECF Nos. 30, 32 (collectively, the "Opposition"). (The Court has reviewed Plaintiff's supplemental submission, ECF No. 32, as part of his Opposition, which he submitted to correct "administrative errors." *Id.* at 1. For the sake of convenience, and because the documents styled as pleadings in both submissions are materially the same, the Court will cite to the first submission, ECF No. 30, because that is where Plaintiff attached his voluminous exhibits, as discussed further herein.) Although the general rule is that a plaintiff may not raise new allegations in his opposition to a motion to dismiss, because Plaintiff is representing himself, the Court will consider both the allegations in the SAC and in Plaintiff's Opposition in deciding the motion. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Guzman v. Barr*, No. 19-cv-7163, 2021 WL 135909, at *2 (S.D.N.Y. Jan. 14, 2021) ("In addition to what is contained in the complaint, the Court may consider factual statements made in a *pro se* plaintiff's opposition to a motion to dismiss."). Additionally, because Plaintiff is appearing *pro se*, the Court will not strike his Opposition and the exhibits referenced therein for failing to comply with the Court's Individual Practices

was confronted by a NYCTA representative conducting an "observation ride" due to reports of unprofessionalism and reckless driving, *id*. ¶¶ 11–14.  After refusing to show his pass number to the representative, Plaintiff was issued a violation for "failure to comply."  *Id*. ¶ 14.  That same day, Plaintiff's Union representative informed him that the NYCTA was taking him "out of service" until February 11, 2021.  *Id*. ¶ 15.  The disciplinary charge was brought before an arbitrator on February 11, 2021, at which time the NYCTA sought Plaintiff's termination.  *Id*. ¶¶ 23–25.  The arbitrator did not terminate Plaintiff, but instead removed him from passenger service and ordered Plaintiff to attend therapy sessions for his mental health.  *Id*. ¶ 26.  Later that same month, Plaintiff requested reassignment to the overnight shift as a reasonable accommodation so he could attend his therapy sessions during the day.  *Id*. ¶ 28.  Plaintiff was informed that the request was denied by the NYCTA because of a lack of supervision on the overnight shift.  *Id*. ¶ 29.  Plaintiff and the Union met with the NYCTA in February 2021 regarding the request for a reasonable accommodation, and the NYCTA again denied the request.  *Id*. ¶¶ 30, 34.

On May 11, 2021, the arbitrator extended Plaintiff's suspension from passenger-facing service by 90 days.  *Id*. ¶ 48. The Union declined Plaintiff's requests "to file motions and a grievance to have [the arbitrator] removed and replaced," to file a grievance based on the arbitration "changing the terms and conditions of his employment," and to file a grievance against management for refusing to reinstate him to full duty as a bus operator.  *Id*. ¶¶ 49–50.  On August 10, 2021, the arbitrator again extended Plaintiff's time away from passenger service by another 30 days.  *Id*. ¶ 55.  At the next hearing before the arbitrator on September 14, 2021,

---

concerning page limits for both memoranda of law and exhibits.  *See* ECF No. 32 at 1.  Unless noted, case law quotations accept all alterations and omit all internal quotation marks, citations, and footnotes.

Plaintiff was ordered back to duty as a bus operator and was cleared of the charges and infractions that were brought against him at the February 11, 2021, hearing.  *Id.* ¶ 56.

After apparently missing training required by the arbitrator, Plaintiff was again taken "out of service" on September 22, 2021, for insubordination.  *Id.* ¶ 68.  Thereafter, on October 21, 2021, Plaintiff attended an arbitration hearing related to the September 22nd suspension.  *Id.* ¶ 72. On February 4, 2022, the arbitrator issued his decision terminating Plaintiff's employment, and Plaintiff was advised by the Union of his termination on February 8, 2022.  *Id.* ¶ 82.

## LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that, even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally").

In addition to requiring sufficient factual matter to state a plausible claim for relief, pursuant to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must provide a short, plain statement of claim against the defendant so that it has adequate notice of the claims against it. *Iqbal,* 556 U.S. at 678 (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."). A pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000).

## DISCUSSION

I.     **Plaintiff Has Failed to Allege That the Union Breached Its Duty of Fair Representation as Needed to Plead a Violation of Title VII and the ADA**

Scattered throughout the SAC are a number of conclusory allegations claiming that the Union's conduct was based on Plaintiff's race, color, sexual orientation, and disability. *See, e.g.*, ECF No. 19 ¶¶ 7, 68, 73, 83–85; *see also id.* at 22, 27.[4] None of these allegations, however, suffices to support the inference that the Union's conduct was animated by an improper motive.

Title VII provides that it shall be "an unlawful employment practice" for a "labor organization" to "discriminate against[ ] any individual because of his race, color . . . [or] sex." 42 U.S.C. § 2000e–2(c)(1). Similarly, the ADA prohibits covered entities, including unions, from discriminating in employment against any qualified individual on the basis of disability. *Id.* §§ 12111(2), 12112; *see also Klaper v. Cypress Hills Cemetery*, No. 10-cv-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012). Discrimination claims against a union, however, are analyzed differently from claims against an employer. *See McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010); *Klaper*, 2012 WL 959403, at *7; *Oparaji v. United Fed'n of Tchrs.*, 418 F. Supp. 2d 139, 146 (E.D.N.Y. 2006). To make out a Title VII or ADA claim against the Union, Plaintiff must allege facts showing that it breached its duty of fair

---

[4]     The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

representation ("DFR") to Plaintiff, and that the Union's "actions were motivated by discriminatory animus." *McIntyre*, 380 F. App'x at 49; *see also Klaper*, 2012 WL 959403, at *7.

"The [DFR] is a statutory obligation under the NLRA [National Labor Relations Act], requiring a union to serve the interests of all members without hostility or discrimination[,] . . . to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 300 (E.D.N.Y. 2019) (quoting *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015)); *see also Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A union breaches its [DFR] if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Forkin*, 394 F. Supp. 3d at 300 (quoting *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017)). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. 2015) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). "A union's acts are discriminatory when *substantial* evidence indicates that the union engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." *Id.* at 284 (emphasis added). "To plead that a union's actions were undertaken in bad faith, the plaintiff must allege fraudulent, deceitful, or dishonest action." *Id*.

When a plaintiff sues a labor union alleging that the union breached its DFR, the court's review of that alleged breach "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." *Air Line Pilots*, 499 U.S. at 78. And, while a union "may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," *Vaca*, 386 U.S. at 191, "the [DFR] is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to

6

process a grievance due to error in evaluating the merits of the grievance," *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994); *see also Wells v. Mount Vernon Hosp.*, No. 01-cv-9129, 2002 WL 1561099, at *4 (S.D.N.Y. July 15, 2002) ("Mere negligence . . . does not amount to a breach of the [DFR].")  Moreover, "although a union has a duty to perform some minimal investigation, only an egregious disregard for union members' rights constitutes a breach of the union's duty to investigate." *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011).

Applying these exacting standards to the SAC and the additional allegations raised for the first time in the Opposition leads to the inevitable conclusion that Plaintiff has failed to assert a viable claim that the Union breached its DFR.  Plaintiff's allegations, while voluminous, at most make out a general claim of "dissatisfaction with the manner in which the [U]nion conducted the representation" of him in the disciplinary process carried out by the NYCTA.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 689 (S.D.N.Y. 2007) (dismissing *pro se* plaintiff's claims against union for failure to allege breach of the DFR).  For example, Plaintiff complains that the Union mishandled its representation of him related to the encounter he had with a passenger on January 29, 2021, and on the following day with the NYCTA representative, by: (1) failing to provide the NYCTA with an adequate account of the facts related to the passenger encounter, ECF No. 19 ¶ 17; (2) not reviewing video surveillance of that encounter, *id*. ¶ 19; and (3) acquiescing in the destruction of the video from the January 30th encounter with the NYCTA representative when it allowed the bus Plaintiff was operating on that date to be put back into service, which resulted in the erasing of the recording, *id*. ¶ 21.  Plaintiff also complains about: (1) the manner in which the Union managed the arbitration process, including how it interacted with the arbitrator, *see, e.g.*, *id*. ¶¶ 50–51, 57; *id*. at 22–24; (2) how the Union handled Plaintiff's

subsequent suspension for insubordination related to his failure to attend training, *see, e.g.*, *id.* ¶¶ 63–64, 68; *id.* at 27; (3) the Union's failure to communicate with Plaintiff on numerous occasions, *see, e.g.*, *id.* ¶¶ 62, 65, 70, 73, 75–76; *id.* at 28; (4) the Union's failure to grieve the NYCTA's refusal to allow Plaintiff to work the overnight shift so he could attend therapy, *id.* at 26–27; and (5) the Union's failure to investigate claims that Plaintiff was subjected to workplace violence, *see, e.g.*, ECF No. 30 at 7, 24.

Unfortunately for Plaintiff, none of these numerous allegations plead with any particularity that the complained-of conduct, or failure to act, on the part of the Union was done in bad faith or was otherwise arbitrary or discriminatory.  Plaintiff's own allegations in the SAC demonstrate that the Union expended much time and extensive resources, including at its highest level of management, trying to communicate with Plaintiff and resolve the various disciplinary infractions with which Plaintiff was charged by the NYCTA, including attending the various sessions with the arbitrator and trying to obtain the work-shift accommodation so Plaintiff could attend therapy.  *See, e.g.*, ECF No. 19 ¶¶ 15–16, 18, 29–30, 34, 52, 56, 68, 82; ECF No. 30-3 at 150 (Ex. G to Opposition).  Not only are the allegations in the SAC and the Opposition insufficient to support a plausible inference that the Union breached its DFR to Plaintiff, but Plaintiff's own allegations significantly undermine his claims by showing that the Union, in fact, assisted him throughout the grievance process.  *See, e.g.*, *Powell v. Merrick Acad. Charter Sch.*, No. 16-cv-5315, 2018 WL 1135551, at *7–8 (E.D.N.Y. Feb. 28, 2018) (a plaintiff who included in her pleading an obvious alternative explanation for her termination had "undermined her own cause by alleging facts that refute any inference of discrimination"); *Romero v. Loc. Union 272*, No. 15-cv-7583, 2016 WL 5376210, at *8 (S.D.N.Y. Sept. 26, 2016) (no breach of the DFR where union "took action on [plaintiff's] behalf" but "[plaintiff] disagreed with the outcome" of

the grievance process).  The mere fact that Plaintiff wanted the Union to do even more on his behalf does not establish that it breached the DFR, as the law gives the Union "latitude to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Daniel v. ABM Indus., Inc.*, No. 16-cv-1300, 2017 WL 1216594, at *7 (S.D.N.Y. Mar. 31, 2017); *see also Canady U of R/Strong Memorial Med. Ctr.*, No. 21-2150, 2022 WL 17825332, at *2 (2d Cir. Dec. 21, 2022) ("[G]eneralized allegations that the Union failed to do investigations and never responded to [plaintiff's] concerns do not plausibly allege that the Union acted in a way that was arbitrary, discriminatory, or in bad faith, as necessary to state a claim for breach of the [DFR].").

The Court has also considered Plaintiff's passing references to alleged disparate treatment.  First, Plaintiff alleges that various coworkers, who were neither Black, gay, nor disabled, were permitted to work the overnight shift he desired.  ECF No. 19 at 26–27.  Construing the Complaint liberally, Plaintiff alleges that the Union breached its DFR by not filing a grievance on this basis.  *Id.* at 26.  Of course, Plaintiff does not allege that the Union— rather than the NYCTA—treated his allegedly similarly-situated coworkers preferably in this instance.  And his allegation is a nonstarter because, by his own account, the Union *did* file a grievance concerning the denial of his requested reasonable accommodation to work overnight, ECF No. 30-1 at 7, a copy of which Plaintiff attached to his Opposition, ECF No. 30-3 at 150. *See Goodman v. Loc. 804 Union of Int'l Bhd. of Teamsters*, 21-cv-4655, 2023 WL 6283250, at *5 (E.D.N.Y. Sept. 26, 2023) (plaintiff fails to demonstrate discriminatory animus where union took action requested by plaintiff but did not obtain favorable result, even where a different employee obtained such favorable result "under similar circumstances").

Second, Plaintiff raises allegations regarding how the Union allegedly treated two other Union members.  *See* ECF No. 30 at 20–22, 30–31; ECF No. 19 ¶ 47.  Plaintiff, however, fails to

explain or provide sufficient factual support to permit the Court to infer that the Union members referenced by Plaintiff had cases that were in any way comparable to Plaintiff's.  These allegations, therefore, are insufficient to permit the Court to infer a discriminatory animus based on similarly-situated comparators who did not suffer a similar adverse action to Plaintiff.  *See Saunders v. N.Y. Convention Ctr. Operating Corp.*, No. 20-cv-5805, 2021 WL 4340793, at *10 (S.D.N.Y. Sept. 23, 2021) (discriminatory animus not shown where plaintiff made "allegations contain[ing] scant facts by which to assess any Union conduct with regard to such [comparator] employees and their alleged situations); *see also Kronemberg v. Winthrop Univ. Hosp.*, No. 15-cv-3235, 2016 WL 2939153, at *5 (E.D.N.Y. May 19, 2016) (allegation that "[d]efendants discriminated against [plaintiff] by supervising her in a harsher manner than similarly situated white employees" was insufficient to state a claim because it did not sufficiently allege how other employees were similarly situated with regard to the alleged discriminatory treatment).

For the same reason, Plaintiff fails to state a claim under Title VII or the ADA with his threadbare, conclusory allegations that the Union refused to provide him with personal protective equipment ("PPE") during the coronavirus pandemic but provided such equipment, and adequate ventilation, to other employees who were neither Black, gay, nor disabled.  ECF No. 19 at 24; ECF No. 30 at 6.  Based on Plaintiff's later Opposition, it is unclear that these allegations even concern the Union.  *See* ECF No. 30-1 at 7 ("NYCTA failed to provide Plaintiff with proper [PPE] . . . which were afforded to other employees performing the same duties . . . "); ECF No. 30 at 6 (stating that Plaintiff was "forced" by the NYCTA to perform cleaning work without proper equipment or ventilation).  Plaintiff attempts to support his allegation by pointing only to photos of people wearing PPE.  *See* ECF No. 30-3 at 32–35 (Exhibit 9 to Plaintiff's Opposition).  But his own allegations suggest that only the NYCTA, and not his Union, engaged in direct

discrimination or retaliation with respect to PPE distribution.  *See* ECF No. 30 at 6.  This barebones claim does not plausibly allege entitlement to any relief.

Plaintiff also suggests, albeit vaguely, that the Union retaliated against him.  *See, e.g.*, ECF No. 19 ¶ 52, 84.  To state a claim for retaliation against the Union under Title VII, Plaintiff needs to allege that "(1) []he was engaged in an activity protected under Title VII and known to the union; (2) []he suffered adverse union action; and (3) there was a causal connection between the protected activity and the union's actions."  *See Agosta v. Corrections Offs. Benevolent Ass'n*, 107 F. Supp. 2d 294, 309 (S.D.N.Y. 2000).  Plaintiff's allegations do not come close to meeting this standard.  For example, Plaintiff asserts in conclusory fashion that the Union engaged in "unlawful and retaliatory practices."  ECF No. 19 at 28.  But here and elsewhere, Plaintiff "fails to allege sufficient facts to suggest a causal connection between [his] protected activity and any adverse Union action."  *See Dillard v. SEIU Loc. 32BJ*, No. 15-cv-4132, 2015 WL 6913944, at *9 (S.D.N.Y. Nov. 6, 2015).  Here, too, Plaintiff's own allegations undermine his theory of retaliatory conduct.  For example, he alleges that the Union "discouraged" him from filing a grievance about his request to work the overnight shift on the basis that NYCTA management "just d[idn't] like [him]" and that he would be fired if he filed a grievance.  ECF No. 19 ¶ 39.  But, again, Plaintiff concedes that the Union did ultimately file that grievance, demonstrating no "adverse Union action."  *See* ECF No. 30-1 at 7; ECF No. 30-3 at 150.  And, even had he sufficiently alleged that the Union took action adverse to him, Plaintiff fails to allege that such conduct was causally connected to the protected activity.

Otherwise, Plaintiff's "retaliation" allegations just restate his general frustration with the Union's representation of him.  *See* ECF No. 19 at 28 (alleging retaliation on the basis that the Union did not provide "proper advocacy" for Plaintiff and "maliciously" failed to communicate

with him).  To the extent Plaintiff tries to allege some sort of conspiracy between the NYCTA

and the Union to oust him from his job, *see, e.g.*, *id.* at 27 ("Reinstatement process was

sabotaged by Defendants . . . ."), those allegations are "skeletal" and unexplained.  *See Forkin*,

394 F. Supp. 3d at 302.  At bottom, Plaintiff "has not alleged facts suggesting that the Union's

failure to pursue his claims was tied to his complaints."  *See Romero*, 2016 WL 5376210, at *10.

Plaintiff has failed to allege sufficient facts demonstrating that the Union breached its

DFR.  Specifically, he has failed sufficiently to allege that any action or omission on the part of

the Union was arbitrary, discriminatory, or done in bad faith.  Accordingly, Plaintiff's Title VII

and ADA claims against Local 726 must be dismissed.  *See Klaper*, 2012 WL 959403, at *12

(dismissing Title VII and ADA claims based on plaintiff's failure sufficiently to allege breach of

the DFR).

## II.     To the Extent Plaintiff Alleges Additional Federal and State Claims, They Also Fail

Plaintiff does not explicitly refer to the NLRA, Labor Management Relations Act

("LMRA"), or state law, but does, at various points, refer to alleged breaches of a collective

bargaining agreement, *see, e.g.*, ECF No. 19 at 22, and generally to breaches of the DFR, *see,

e.g.*, ECF No. 30 at 18.  Interpreting Plaintiff's pleadings "to raise the strongest arguments that

they suggest," *see Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000), the Court considers whether

Plaintiff has stated a claim pursuant to the NLRA, LMRA, or the state DFR, but concludes that

he has failed to state a claim under any of these alternative theories.  In addition, the Court

considers potential claims under the NYSHRL and the NYCHRL, but dismisses those claims for

lack of jurisdiction.

First, to the extent Plaintiff asserts a freestanding DFR breach under the NLRA, 29

U.S.C. § 159(a), that claim is dismissed.  To state such a claim, "a plaintiff must plead that (1)

the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was a 'causal connection' between the union's wrongful conduct and the member's injuries." *See Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 283 (S.D.N.Y. 2014) (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)). But the NLRA does not cover public employees. *See Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (citing 29 U.S.C. § 152(2)). Plaintiff alleges that he worked for the NYCTA, ECF No. 19 ¶ 5, meaning that he was a public employee. *See Kristiansen v. Metro. Transp. Auth.*, No. 22-cv-5601, 2023 WL 2330380, at *2 (S.D.N.Y. Mar. 2, 2023) (collecting cases); *Nelson v. NYCTA*, No. 23-cv-6112, 2023 WL 6370773, at *3 (E.D.N.Y. Sept. 29, 2023). The NLRA therefore precludes him from bringing a DFR claim against his Union. *See Green*, 16 F.4th at 1076 (affirming dismissal of DFR claim against union where plaintiff was public employee not covered by the NLRA).

Any hybrid claim brought pursuant to Section 301 of the LMRA, *see* 29 U.S.C. § 185, fails for the exact same reason. In a so-called "hybrid § 301/fair representation claim," an employee may sue both the employer and the union, but "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its [DFR] vis-a-vis the union members." *See Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016). But like the NLRA, the LMRA does not cover public employees. *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009). Because any hybrid claim against the Union is "derivative" of the claim against the NYCTA, the nonviability of Plaintiff's claim against the NYCTA forecloses any claim that the Union breached its DFR, *see Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 101 (2d Cir. 2022), and is dismissed, *see Kristiansen*, 2023 WL 2330380, at *3. In any case, even if the Court were to proceed to either the standalone or hybrid

DFR claims, it would dismiss them because Plaintiff has not alleged sufficient facts to state a claim for a breach of the DFR, as already explained.

Second, to the extent Plaintiff asserts a DFR claim under state law, that claim is also dismissed. New York law imposes a DFR on unions. N.Y. Civ. Serv. § 209-a(2)–(3). That claim is time-barred. State law claims against a union for alleged breaches of the DFR are subject to a four-month statute of limitations. *See Malcolm v. Ass'n of Supervisors & Admins. of Rochester*, 831 F. App'x 1, 4 (2d Cir. 2020) (citing N.Y. C.P.L.R. 217(2)). A plaintiff must bring suit "within four months of the date the . . . former employee knew or should have known that the breach [of the DFR] . . . occurred, or . . . of the date the . . . former employee suffer[ed] actual harm, whichever is later." N.Y. C.P.L.R. 217(2). Here, Plaintiff alleges that he learned of his discharge around February 8, 2022, ECF No. 19 ¶ 82, which is the "latest event on which h[is] claim is predicated," *see Malcolm*, 831 F. App'x at 4 (calculating start of the statute-of-limitations period at employee's termination). But he did not sue until January 30, 2023, well outside of the four-month window in which Plaintiff was permitted to bring such a claim. ECF No. 1 (Original Complaint). The Court therefore dismisses any state law DFR claim. *See Malcolm*, 831 F. App'x at 4. And, even had the Court proceeded to the state law claim, it would have found no breach of the DFR there, either, for the reasons already explained. *See Bacchus v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 214, 249 (E.D.N.Y. 2015) ("The standard for establishing a breach of the [DFR] is generally the same whether the plaintiff is alleging such a breach under federal or New York state law.").

Finally, Plaintiff does not raise claims under the NYSHRL nor the NYCHRL. Nevertheless, continuing to construe *pro se* Plaintiff's pleadings liberally, the Court considers the applicability of those laws. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d

Cir. 2017) (where "Plaintiff's factual assertions suggest[] claims under the NYSHRL and NYCHRL, the district court [i]s required to construe [the] complaint as asserting claims under those laws," even in the absence of specific references to the relevant statutes). In this case, Plaintiff explicitly invoked the NYSHRL and the NYCHRL before the NYSDHR, ECF No. 21-4 ¶ 48, which then determined that there was no probable cause to believe that the Union had engaged in the unlawful discriminatory practice of which Plaintiff complained, *see* ECF No. 21-4 (NYSDHR Determination). Because Plaintiff brought his NYSHRL claim before the NYSDHR, the statute's election of remedies provision, "with certain exceptions not applicable here, precludes resort to courts after claims have been filed with a local commission on human rights." *See id.* at 157 n.1 (citing *Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013)); N.Y. Exec. Law § 297(9)). As such, a NYSHRL claim is barred. *See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187–88 (S.D.N.Y. 2011)

Similarly, the NYCHRL provides a "a cause of action in any court of competent jurisdiction . . . unless [claimant] has filed a complaint with the city commission on human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence." N.Y.C. Admin Code § 8-502(a). Although the NYSDHR's determination did not explicitly mention the NYCHRL, *see* ECF No. 21-4 at 2–3, it is well-settled that "a claimant's [NYSDHR] complaint addressing the same incident, and that results in a finding of no probable cause, procedurally bars the claimant from relief under the NYCHRL." *See Higgins,* 836 F. Supp. 2d at 189; *see also Rasmy v. Marriott Int'l, Inc.*, No. 16-cv-4865, 2017 WL 773604, at *5 (S.D.N.Y. Feb. 24, 2017) (emphasizing that the NYSHRL and the NYCHRL election of remedies bars relate to "unlawful discriminatory *practices*, not claims"). In other words, the "bar is coextensive with the substance of the claim."

*Higgins*, 836 F. Supp. 2d at 189.  As in *Higgins*, Plaintiff already presented "the same operative events" as those in this case to the NYSDHR, which did not find probable cause, rendering any NYCHRL claim barred under Section 8-502(a).  *See id.* at 189–90; *see also Forkin*, 2020 WL 9816001, at *5–6 (citing *Higgins* and concluding that the election of remedies doctrine barred plaintiff's NYSHRL and NYCHRL claims).[5]  Because both the NYSHRL and the NYCHRL election of remedies bars are jurisdictional, *see Adams v. Legendary Mktg.*, No. 23-cv-6167, 2023 WL 6444843, at *3 (S.D.N.Y. Oct. 3, 2023); *Higgins*, 836 F. Supp. 2d at 190; *Forkin*, 2020 WL 9816001, at *7, the Court dismisses Plaintiff's claims arising under them without prejudice, *see Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999).

### III.    The Court Declines to Grant Plaintiff Leave to Amend

Plaintiff does not seek leave to amend.  However, because he is representing himself, the Court nevertheless has considered whether further amendment here is warranted.  Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," the Court declines to grant Plaintiff leave to amend his

---

[5]    For the same reason, any claim against the Union concerning the distribution of PPE brought under the NYSHRL or the NYCHRL would also be barred.  The election of remedies doctrine "is not limited to the precise claims brought in the administrative proceeding, but extends to *all claims* arising out of those same events."  *See Rochester v. Fortune Soc'y*, No. 16-cv-9423, 2018 WL 4574886, at *4 (S.D.N.Y. Sept. 4, 2018) (emphasis added).  Plaintiff's own allegations make clear that any claim against the Union concerning PPE distribution "[is] based on the same operative facts and events underlying the allegations in Plaintiff's NYSDHR complaint."  *Id.*  Indeed, Plaintiff's conclusory allegations concerning PPE distribution are directly bound up with Plaintiff's primary allegation concerning the denial of his request for a reasonable accommodation to work the overnight shift.  *Compare* ECF No. 30-1 at 7 ("During the time Plaintiff's request to work the overnight shift was denied, Defendant NYCTA required Plaintiff to clean; however, [the] NYCTA failed to provide Plaintiff with proper . . . PPE . . . ."), *with* ECF No. 21-3 ¶ 27 (Plaintiff alleges in his NYSDHR complaint that he experienced "discrimination and retaliation . . . when requesting a reasonable accommodation for a shift change").  Because any PPE allegations "aris[e] out of the same incident on which [Plaintiff's] [NYSDHR] claim was based," the election of remedies bar precludes consideration of such a claim under the NYSHRL or the NYCHRL.  *See Higgins*, 836 F. Supp. 2d at 188.

complaint for a third time.  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).  "A court should freely give leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (affirming denial of leave to amend).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."  *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 175 (2d Cir. 2021) (affirming denial of leave to amend).

Here, in its April 25, 2023, Order, the Court provided Plaintiff with a clear warning that his first amended complaint was deficient based on the arguments raised in the Union's pre-motion letter and gave Plaintiff an opportunity to cure those deficiencies by further amending his complaint.  Plaintiff took advantage of this opportunity by filing the SAC.  ECF No. 19.  Thereafter, Plaintiff filed a 40-page, single-spaced Opposition, including nearly 300 pages of exhibits asserting additional facts (many repetitive and irrelevant), ECF No. 30, which the Court has also considered as a further amendment to the SAC when considering the instant motion.  Plaintiff has presented his position exhaustively.

As an initial matter, the fact that the Opposition neither seeks leave to amend, nor explains how Plaintiff would amend further to provide additional facts not already set forth in the Opposition is sufficient reason by itself to deny leave to amend.  *See Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018) (affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments"); *Harris v. Mondelēz Glob. LLC*, No. 19-cv-2249, 2020 WL 4336390, at *3 (E.D.N.Y. July 28, 2020) (denying leave to amend

because plaintiff "offer[ed] no explanation of what new allegations might be added"); *Hawkins v. Coca-Cola Co.*, No. 21-cv-8788, 2023 WL 1821944, at *10 (S.D.N.Y. Feb. 7, 2023) (denying leave to amend where plaintiff amended the complaint once after a pre-motion conference and "ha[d] failed to otherwise suggest that she is in possession of facts that would cure the deficiencies that [d]efendants highlighted in the instant motion and that the [c]ourt highlighted in [its] [o]pinion"). "[L]eave to amend is properly denied where," as here, "all indications are that the *pro se* plaintiff will be unable to state a valid claim." *Jahad v. Holder*, No. 19-cv-4066, 2023 WL 8355919, at *10 (S.D.N.Y. Dec. 1, 2023). In any event, because I have considered the allegations raised for the first time in the Opposition as if they were included in the SAC, Plaintiff has effectively been given another opportunity to amend. *See McKeever v. Singas*, No. 17-cv-4996, 2022 WL 5430426, at *2, *15 (E.D.N.Y. June 16, 2022) (considering allegations raised for the first time in *pro se* plaintiff's opposition in deciding a motion to dismiss and denying plaintiff leave to file a third amended complaint), *report and recommendation adopted as modified*, 2022 WL 4095558 (E.D.N.Y. Sept. 7, 2022).

Based on the above, the Court finds that dismissal with prejudice (except as to Plaintiff's claims under the NYSHRL and the NYCHRL) is therefore warranted for two reasons: "First, Plaintiff has not asked for leave to amend as an alternative to denying the motion to dismiss." *Goodman v. Goodman*, No. 21-cv-10902, 2022 WL 17826390, at *21 (S.D.N.Y. Dec. 21, 2022); *see also Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*, 696 F. App'x 554, 555 (2d Cir. 2017) ("[Plaintiff's] failure to request leave to amend alone supports the District Court's dismissal with prejudice."). Second, because the Court cannot identify what additional facts Plaintiff could allege that could give rise to an inference that the Union acted arbitrarily, in bad faith, or with an otherwise discriminatory animus, it finds that "any attempt to re-plead would . . .

be futile." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022); *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020) ("Where nothing in the record suggests that another complaint could remedy the legal deficiencies, the district court does not abuse its discretion in failing to provide defendants with leave to amend."); *Ramlogan v. 1199 SEIU*, No. 11-cv-125, 2012 WL 113564, at *5 (E.D.N.Y. Jan. 11, 2012) (finding factual allegations in *pro se* plaintiff's complaint "insufficient to state a claim for breach of the [DFR]" and granting motion to dismiss with prejudice).

## CONCLUSION

For the foregoing reasons, the motion to dismiss, ECF No. 21, is GRANTED.  The Clerk of Court is directed to mail a copy of this Order to the *pro se* Plaintiff and to enter judgment and terminate Defendant Local 726 from this action.  In addition, on or before March 13, 2024, Defendant Local 726 is directed to send, via email to the email address listed in Plaintiff's civil cover sheet and mail to Plaintiff's last known mailing address, copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and to submit to the Court at that time proof of service.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
           March 7, 2024

19