UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ANTHONY BLEDSOE,

                       Plaintiff,

      -against-

NEW YORK CITY TRANSIT AUTHORITY,

                       Defendant.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

23-CV-775
(Gonzalez, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

*Pro se* Plaintiff Anthony Bledsoe brings this action against Defendant New York City Transit Authority ("NYCTA"),[1] alleging discrimination on the basis of his race, sexual orientation, and disability in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §§ 12101 *et seq. See generally,* Dkt. No. 19.

Currently pending before this Court, on a referral from the Honorable Hector Gonzalez, United States District Judge, are the parties' cross-motions for summary judgment. *See* Dkt. Nos. 102, 111, *see* Text Order dated May 8, 2025. For the reasons set forth below, the Court respectfully recommends that NYCTA's motion be granted in its entirety and that Plaintiff's motion be denied in its entirety.

Additionally, the Court denies Plaintiff's motion to appoint counsel. Dkt. No. 146.

## I.    <u>Background</u>

### A.    **Factual Allegations**

---

[1] As discussed further below, Plaintiff initially brought this lawsuit against his former union, Amalgamated Transit Union Local 726 ("the Union") as well as NYCTA. *See* Dkt. No. 19. The Court previously dismissed the Union from this action on March 7, 2024. *See* Dkt. No. 36. The caption is updated accordingly.

### i.      Plaintiff's Employment History

The following facts, taken from the parties' Local Civil Rule 56.1 ("Rule 56.1") statements[2] and relevant portions of the record, are undisputed unless otherwise noted.[3]

Plaintiff identifies as a "'foundational African American' with Native American heritage, and a member of the LGBTQ community." Dkt. No. 119 ¶ 1. In 2008 and in 2010, prior to his employment with NYCTA, Plaintiff claims that he was "physically attacked." Dkt. No. 111-1 ¶ 2. From January of 2012 to July of 2013, Plaintiff sought treatment for the effects of those attacks from the nonprofit organization Safe Horizon. *Id.* ¶ 3. During that treatment, Plaintiff was

---

[2] Multiple Local Civil Rule 56.1 statements have been filed in this action, but the operative Rule 56.1 Statements are located on the docket as follows: Dkt. No. 111-1 (NYCTA's Rule 56.1 Statement of Undisputed Material Facts) and Dkt. No. 119 (Plaintiff's Responses to NYCTA's Undisputed Material Facts).

[3] "Unless otherwise noted, a standalone citation to a party's Local Rule 56.1 statement denotes that the Court has deemed the underlying factual allegation undisputed." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, No. 12-CV-6383 (PKC) (SIL), 2025 WL 948111, at *1 (E.D.N.Y. Mar. 28, 2025). "Any citation to a party's Local Rule 56.1 statement incorporates by reference the documents cited therein." *Id.* "Where relevant, the Court may cite directly to an underlying document," but "where either party (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in the other's 56.1 statement, the Court may deem any such facts undisputed." *Id.* (citing Loc. Civ. R. 56.1(c)-(d); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Eastern District Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original))); *see also Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd, Covelli v. Nat'l Gas Distrib. Corp.*, 49 F. App'x 356 (2d Cir. 2002))); *Su v. Top Notch Home Designs Corp.*, No. 20-CV-5087 (GRB) (JMW), 2023 WL 8878553, at *3 (E.D.N.Y. Dec. 22, 2023) (same). Where "the record does not support the assertions in a 56.1 statement, those assertions should be disregarded, and the record viewed independently" because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001); *Cemetery Workers Supplemental Pension Fund by Alladeen v. Lutheran All Faiths Cemetery*, No. 19-CV-6897 (RPK) (RML), 2021 WL 7908022, at *1 (E.D.N.Y. Sept. 9, 2021) (citation and quotation marks omitted) ("Where [] a party opposing summary judgment fails to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." ).

diagnosed with Post Traumatic Stress Disorder ("PTSD"). *Id.* ¶ 4. Plaintiff discontinued his treatment with Safe Horizon in July of 2013. *Id.* ¶ 5.

On or about July 27, 2014, Plaintiff began working as a bus operator for NYCTA. *Id.* ¶ 6. As a bus operator for NYCTA, Plaintiff's duties and responsibilities included the safe and efficient operation of a Metropolitan Transit Authority ("MTA") New York City Transit bus, as well as the transportation of passengers along assigned routes while adhering to a schedule, New York City traffic regulations, New York State laws, and MTA New York City Transit rules and regulations. Dkt. No. 111-1 ¶ 10.[4] Upon being hired by NYCTA, Plaintiff immediately became a member of the Union, which was a party to a certain collective bargaining agreement with NYCTA (the "CBA"). *Id.* ¶¶ 12-13.

In or about 2015, Plaintiff was transferred to the Yukon Depot on Staten Island, where he remained for the remainder of his career with NYCTA. *Id.* ¶ 20. During Plaintiff's tenure with NYCTA, and as discussed further *infra*, Plaintiff was disciplined for a wide range of occurrences, including, *inter alia*, rude and reckless behavior; reckless driving; insubordination; reckless operation; patterned and undocumented absences; counseling for patterned and undocumented absences; speeding; verbal altercation with a supervisor; improper performance; yelling at a customer; failure to show at a requalification session; and gross misconduct. *Id.* ¶ 22. Plaintiff contends that these infractions were "pretextual." Dkt. No. 119 ¶ 22. Plaintiff was allegedly involved in five motor vehicle accidents, at least one of which involved significant passenger injuries. Dkt. No. 111-1 ¶ 24.

### ii.    The January 29, 2021 Incident and Observation Ride

---

[4] Plaintiff disputes this assertion, but only by stating that "[s]afety is first. Then driving in all kind of favorable or unfavorable weather conditions and obeying the signage and vehicular & traffic laws." Dkt. No. 119 ¶ 10.

On January 29, 2021, at approximately 10:45 a.m., Plaintiff alleges that an "emotionally disturbed patient" boarded an MTA bus that Plaintiff was driving. Dkt. No. 111-1 ¶ 28.  Plaintiff alleges that this individual verbally assaulted him.  *See id.*; *see also* Dkt. No. 19 ¶ 10.[5] Specifically, Plaintiff alleges that the individual evaded the bus fare, used offensive language on the bus (including anti-gay slurs), and threatened to shoot Plaintiff. Dkt. No. 111-1 ¶ 29.  Plaintiff claims that he exited the bus and that police officers then removed the individual from the bus.  *Id.* ¶ 31.  The individual, however, attempted to re-enter the bus.  *Id.* ¶ 32.  Another MTA employee "arrived at the scene of the incident after the customer made the alleged threats and slurs," who asked Plaintiff whether "he was okay."  *Id.* ¶ 35-36.  Plaintiff then continued in service that same day.  *Id.* ¶ 39.

On January 30, 2021, Plaintiff underwent an observation ride, which is a performance evaluation during which an observer boards an operator's bus in plainclothes and without notice to the operator, to evaluate the operator's performance. *Id.*  ¶¶ 45-46.  Plaintiff's January 30, 2021 observation ride was conducted by Dispatcher Marasy Sarete ("Dispatcher Sarete").[6]  *Id.* ¶ 53.

After the observation ride, Dispatcher Sarete identified himself as a dispatcher from "Zerega Safety and Training" ("Zerega").  *Id.* ¶ 55-56.  Zarega is NYCTA's facility responsible for overseeing maintenance and training operations for transportation services in the region. *Id.* ¶¶ 55-56.

Dispatcher Sarete showed Plaintiff his badge twice, as well as his identification card, also

---

[5] The second amended complaint is unverified and therefore cannot be considered as evidence at summary judgment, but the Court includes facts from the second amended complaint to provide relevant context.  *See Zambrano v. Envios Espinoza*, No. 22-CV- 03031 (OEM) (SIL), 2025 WL 1808694, at *1 (E.D.N.Y. July 1, 2025) (citing, *inter alia*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

[6]  Plaintiff disputes the "alias" of the representative from Zarega.  *See, e.g.*, Dkt. No. 119 ¶ 53.  Plaintiff maintains that the representative provided the "alias" of "Sorrento" instead, and refers to the Zarega Representative as such throughout his Rule 56.1 statement.  *Id.*

called a pass. *Id.* ¶¶ 55. Dispatcher Sarete also used a "magic word" to alert Plaintiff he was subject of an observation ride; the "magic word" is typically "Zerega." *Id.* ¶ 56. Dispatcher Sarete further requested Plaintiff to convey his pass number, but Plaintiff refused. *Id.* ¶¶ 55-58.

Plaintiff then became visibly upset, causing a nearby officer to approach and ask if everything was okay. *Id.* ¶¶ 60-62. Plaintiff answered, "No[,] this guy is harassing me, and I don't know who he is." *Id.* ¶ 62. Dispatcher Sarete showed the officer his badge and explained that he was Plaintiff's supervisor and was conducting an undercover observation ride; Plaintiff told the officer that Dispatcher Sarete was not his supervisor and challenged the legitimacy of the badge. *Id.* ¶¶ 63-64. The officer then walked away. *Id.* ¶¶ 63, 65.

After the officer left the scene, Dispatcher Sarete informed Plaintiff that he would be issued a violation for his conduct following the observation ride. *Id.* ¶ 66. Dispatcher Sarete then "left the scene" and contacted the "Staten Island Console" to confirm Plaintiff's pass number. *Id.* ¶¶ 67-68. The Staten Island Console then contacted Plaintiff to verify his pass number. *Id.* ¶ 69.

Prior to the issuance of any formal disciplinary actions in relation to the encounter with Dispatcher Sarete, Plaintiff contacted the Union to report an "Injury on Duty" ("IOD") and requested he be placed on IOD status due to the events on January 29, 2021.[7] *Id.* ¶¶ 70-71.

On January 30, 2021, in connection with the observation ride that day, Plaintiff received two "disciplinary action notifications" ("DANs"), which are written notices advising an employee of potential violations of NYCTA's rules or regulations and notifying that employee of possible disciplinary action. *Id.* ¶¶ 75-76, 84. Additionally, Plaintiff received a DAN "for gross misconduct

---

[7] An IOD "occurs when a Transit Authority employee is injured in the course of his or her employment." Dkt. No. 111-1 ¶ 70. NYCTA further represents that "IOD status is permitted to employees who sustain accidental injuries while engaged in the performance of his or her assigned Transit Authority duties if such accidental injury directly causes incapacity from work." *Id.* ¶ 74. Plaintiff claims that neither "[m]anagement nor the [U]nion explained to Plaintiff the criteria of going IOD," and that "[t]here is no criteria" for assuming IOD status. Dkt. No. 119 ¶ 70.

due to the ongoing nature of disciplinary issues he displayed in the year leading up to the observation ride." *Id.* ¶ 77.  NYCTA sought Plaintiff's dismissal as the penalty resulting from the DANs.  *Id.* ¶ 78.

### iii.    The Grievances and First Arbitration

Pursuant to the grievance procedures in the CBA—which is governed by a three-step process—Plaintiff grieved the January 30, 2021 DANs on February 3, 2021.  Dkt. No. 111-1 ¶ 84. Plaintiff "attended a Step I meeting on February 3, 2021 and the charges and penalty sought were sustained." *Id.* ¶ 85.

On February 4, 2021, Plaintiff "attended a Step II hearing." *Id.* ¶ 86.  The hearing officer found that the conduct reported in the DANs warranted Plaintiff's dismissal from service given the nature of the allegations.  *Id.* ¶ 87.

Plaintiff thereafter appealed the Step II decision, which led to an arbitration under Step III of the CBA's grievance procedure.  *Id.* ¶ 89.  Prior to the arbitration hearing, schedule for February 11, 2021, Plaintiff met with union representatives and a union attorney to discuss his DANs.  *Id.* ¶ 90.  Additionally, two of Plaintiff's supervisors expressed that they did not Plaintiff to be terminated, but rather "reformed" ahead of the arbitration.  *Id.* ¶ 93.

On February 11, 2021, Plaintiff attended the arbitration, where his union representatives and legal counsel were present.  *Id.* ¶ 94.  Plaintiff recorded the arbitration on his mobile device. *Id.* ¶ 95.  The arbitrator, Martin Scheinman, had previously presided over an arbitration involving Plaintiff.  *Id.* ¶ 96.  Mr. Scheinman thus "had jurisdiction over 13 pending DANs issued against Plaintiff."[8] *Id.* ¶ 97.

At the hearing, Dispatcher Sarete testified as to the January 30, 2021 observation ride.  *Id.*

---

[8]  Although Plaintiff does not dispute this fact, Plaintiff claims he was "cleared of" of the DANs issued against him.  Dkt. No. 119 ¶ 97.

¶ 98.  Plaintiff claimed that Dispatcher Sarete "startled him because he had been 'assaulted'" before the incident.  *Id.* ¶ 99.  Plaintiff also claimed that he was "mistreated by members of the public and NYCTA management because he is African American and gay."  *Id.* ¶ 100.

At the conclusion of the February 11, 2021 arbitration, the arbitrator ordered Plaintiff to use the Union Assistance Program ("UAP") to seek assistance with his emotional needs.  *Id.* ¶ 101. The arbitrator further ordered Plaintiff to assume "other duties" for a 60-day period.  *Id.* ¶ 102. Plaintiff accepted the arbitrator's terms in lieu of termination.  *Id.* ¶ 103.  The matter was adjourned to April 15, 2021, for Plaintiff to comply with the terms and to evaluate whether Plaintiff could return to passenger service.  *Id.* ¶¶ 104, 130.

### iv.    Plaintiff's Assumption of "Other Duties" And Further Grievances

After the arbitration, Plaintiff engaged in "other duties" pursuant to the arbitrator's terms. Dkt. No. 111-1 ¶ 106.  These "other duties" included cleaning bus driver compartments and windows.  *Id.*  Plaintiff was additionally permitted to perform caretaker work as part of his "other duties," which was ordinarily reserved to those with medical restrictions.[9]  *Id.* ¶ 113.  Plaintiff, however, had no medical restriction designations from the Medical Assessment Center, the relevant determining authority.  *Id.* ¶¶ 111-12.

Concurrently with his assumption of "other duties" and caretaker work, Plaintiff attended weekly therapy sessions in accordance with the arbitrator's terms.  *Id.* ¶¶ 116-17.

On or around February 16, 2021, Plaintiff requested to work an overnight shift in order to attend a counseling session.  *Id.* ¶ 121.  NYCTA instead "offered an accommodation to attend

---

[9]   The CBA requires that a certain number of assignments be made available to medically-restricted employees to permit them to perform other than the full duties of their titles, including caretaker duties. Dkt. No. 111-1 ¶¶ 110-111.  At the Yukon Depot of the Staten Island Division, there are 14 caretaker assignments, each of which are reserved for Transit Authority employees with medical restrictions as designated by the Medical Assessment Center.  *Id.* ¶ 111.

therapy and make up his hours at the end of his shift." *Id.* ¶ 122.  Plaintiff responded that "the accommodation offered was inadequate because if he had to make up the two to three hours it took to travel to and attend therapy after his shift, he would be stranded on his commute home, because the trains were on a special schedule due to [Covid-19]." *Id.* ¶ 123.  However, it is undisputed that the therapy sessions Plaintiff attended occurred virtually from his home. *Id.* ¶ 124.  Additionally, on the days that Plaintiff attended therapy sessions, "Plaintiff requested and was granted vacation or sick time[.]" *Id.* ¶ 125.

On April 13, 2021, Plaintiff's therapist recommended that as Plaintiff was treated "for the past 8 weeks," a "return to full duty [was] appropriate." *Id.* ¶ 129.

Plaintiff was scheduled to attend an arbitration session on April 15, 2021, but the session "was adjourned because he was reportedly ill." *Id.* ¶ 130.

On April 25, 2021, Plaintiff's union filed a grievance at his direction, asserting that "[Plaintiff] was given 'other duties,' by the arbitrator. [NYCTA] gave employee work[] hours that were not conducive to his commute and/or his mandated therapy sessions while other employees in restricted duty assignments were allowed to work hours grievant desired." *Id.* ¶ 131.  The grievance was denied on the basis that "Plaintiff was placed on 'other duties' above and beyond the [Yukon Depot in Staten Island's] budgeted quota and [its] needs at the time were based upon the need to disinfect buses for [COVID-19]." *Id.* ¶ 132.  Plaintiff appealed that denial on April 26, 2021. *Id.* ¶ 133.

On May 7, 2021, Plaintiff's union filed another grievance requesting that "vacation time Plaintiff used to attend counseling be returned to him, and alleging that [NYCTA] denied him the overnight accommodation on the basis of race and sexual orientation." *Id.* ¶ 134.  On May 10, 2021, Plaintiff met with union representatives and counsel ahead an arbitration hearing scheduled

for May 11, 2021.  *Id.* ¶ 135.

On May 11, 2021, Plaintiff returned for a second arbitration.  *Id.* ¶ 136.  Mr. Scheinman, again presiding over Plaintiff's arbitration, "awarded [Plaintiff] the overnight shift and extended his placement on other duties for 90 days." *Id.* ¶ 136.

On July 19, 2021, Plaintiff "attended a Step II hearing in connection with his May 7, 2021 grievance for having his vacation time returned to him." *Id.* ¶ 137.  NYCTA denied Plaintiff's May 7, 2021 grievance on September 2, 2021. *Id.* ¶ 138.

On September 14, 2021, Plaintiff reappeared before the arbitrator. *Id.* ¶ 143.  At the arbitration, Plaintiff was "reinstated to full time passenger service and awarded 10 days to be returned to his time bank." *Id.*  The arbitrator conveyed that the determination "was premised upon Plaintiff's representation that he understood how to deal withs stressful situations and that he must follow normal protocol." *Id.* ¶ 144.  Plaintiff recorded the September 14, 2021 arbitration on his mobile device. *Id.* ¶ 145.

### v.    Plaintiff's Reinstatement and Meeting with Management

On September 20, 2021, Plaintiff was to report to the Medical Assessment Center to be medically cleared so that he could return to passenger-facing bus operation duties.  Dkt. No. 111-1 ¶ 146.  Plaintiff was also scheduled to report to the Zarega training facility on September 21, 2021, at 7:00 a.m. *Id.*  Plaintiff, however, was late for the 7:00 a.m. appointment at Zarega. *Id.* ¶ 148.  Plaintiff further contacted the Yukon Depot at 6:28 a.m. on the morning of September 21, 2021, requesting a vacation day. *Id.* ¶¶ 149, 151.  Plaintiff's request was denied due to NYCTA's policy that "[i]t is a violation to call out from work less than one hour before one's shift begins." *Id.* ¶¶ 150-151.  Moreover, Plaintiff did not report to Zarega on September 21, 2021. *Id.* ¶ 152. Plaintiff was then directed to report to the Yukon Depot on September 22, 2021 to complete

paperwork in connection with his reinstatement and missed appointment. *Id.* ¶ 153.

When Plaintiff arrived at the Yukon Depot on September 22, 2021, he met with Union representatives and management personnel. *Id.* ¶ 154. During that meeting, a conflict arose between Plaintiff and the other individuals present for the meeting when Plaintiff accused the management of incompetence and that they were attempting to "sabotage" his reinstatement process. *Id.* ¶ 156. Plaintiff additionally asserted that the management was in violation of local and federal laws, as well as NYCTA Rules and Regulations. *Id.* Plaintiff further accused the Union representatives of "conspiring" with the management and the arbitrator to sabotage his reinstatement process. *Id.* ¶ 157. Tensions between those present at the meeting further arose when Plaintiff was asked to provide an explanation in writing for the reasons that he missed the September 21, 2021 meeting at Zarega. *Id.* ¶ 159.

Following the meeting, Plaintiff exited the room where it was held to complete the relevant paperwork that was requested by management personnel. *Id.* ¶ 160. After hearing the encounter at the meeting, one of Plaintiff's supervisors, Michael Cilmi, entered the room. *Id.* ¶¶ 161-162. Plaintiff reentered the room and began speaking with Mr. Cilmi. *Id.* ¶ 163. Another individual, who was present for the meeting, interrupted Plaintiff and directed him to finish filling out the paperwork, to which Plaintiff responded that "he was not talking to him." *Id.* ¶¶ 164-165. Plaintiff continued making remarks to those present in the room. *Id.* ¶ 167.

### vi.    Subsequent Events and Plaintiff's Termination

On September 22, 2021, Plaintiff was again taken "out of service." *Id.* ¶ 169. Plaintiff was additionally charged with "insubordination, rude behavior, failure to comply, gross misconduct and verbal assault of a supervisor." *Id.* ¶ 170. NYCTA sought dismissal of Plaintiff for the charges. *Id.* ¶ 171.

10

On September 28, 2021, Plaintiff grieved the charges and attended a Step I meeting pursuant to the grievance procedures of the CBA. *Id.* ¶ 173. Plaintiff thereafter attended a Step II hearing on September 30, 2021, where the charges against him were sustained. *Id.* ¶ 174. Plaintiff again recorded the hearing, as he did with other hearings and arbitrations he attended. *Id.* ¶ 175. Plaintiff appealed that Step II decision, which prompted a Step III arbitration before Mr. Scheinman, who had previously presided over Plaintiff's arbitrations. *Id.* ¶ 176.

Plaintiff's arbitration was scheduled for October 14, 2021, but the hearing had to be adjourned because "Mr. Scheinman had to take a phone call." *Id.* ¶ 177. On October 21, 2021, Plaintiff's arbitration resumed, where the individuals who were present for the September 22, 2021 meeting at the Yukon Depot were present. *Id.* ¶ 178-179.

On November 1, 2021, Plaintiff through counsel, served NYCTA and the Union with cease-and-desist letters. *Id.* ¶ 180. Those letters were never answered. *Id.* ¶¶ 180-181; Dkt. No. 119 ¶ 181. Plaintiff began searching for other employment. Dkt. No. 111-1 ¶ 181; Dkt. No. 119 ¶ 181.

On November 22, 2021, Plaintiff's access to non-public facilities was restricted by NYCTA. Dkt. No. 111-1 ¶ 182.

On January 13, 2022, Plaintiff filed an administrative complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 183. That complaint alleged claims against NYCTA for "unlawful discrimination based on disability, race/color, sexual orientation and retaliation for opposition to discrimination." *Id.* ¶ 184.

On February 4, 2022, the arbitrator issued an award in connection with the October 21, 2021 arbitration, finding just cause for and sustaining Plaintiff's termination. *Id.* ¶ 185. Plaintiff

11

failed to appeal the award. *Id.* ¶ 188.

NYCTA terminated Plaintiff's employment on or about February 4, 2022. *Id.* ¶¶ 6.

At some point after Plaintiff's termination, Plaintiff received a text from Crystal Borrell, another NYCTA employee. *Id.* ¶ 190. Ms. Borrell advised Plaintiff that "one operator said to [her] he heard a sup[] call [Plaintiff] a [homophobic slur]." *Id.* Plaintiff, however, has "never heard NYCTA [employees] make derogatory remarks *to his face*." Dkt. No. 111-1 ¶ 191 (emphasis added); Dkt. No. 119 ¶ 191.

On August 17, 2022, the NYSDHR, in acting on Plaintiff's administrative complaint, issued a "no probable cause" finding in determining that NYCTA "provided legitimate, non-discriminatory reasons for its actions taken and that its investigation did not reveal any pretext." Dkt. No. 111-1 ¶ 192. Although Plaintiff represents that he "he wanted the decision appeal[ed]" (Dkt. No. 119 ¶ 193), it is undisputed that Plaintiff did not challenge the NYSDHR's decision administratively or in state court. Dkt. No. 111-1 ¶ 193; Dkt. No. 119 ¶ 193. Plaintiff did, however, contact the NYSDHR's regional director in connection with the finding and called him "nothing more than an executive officer manager" while accusing him of "bias and being racist and anti-gay." Dkt. No. 111-1 ¶ 194.

On October 25, 2022, the EEOC issued a right to sue letter to Plaintiff. *Id.* ¶ 195.

## B.    Procedural History

Plaintiff filed this action on January 30, 2023. *See* Dkt. No. 1. Plaintiff filed an amended complaint on March 31, 2023, *see* Dkt. No. 6, and a second amended complaint on June 6, 2023. Dkt. No. 19. On June 27, 2023, the Union moved to dismiss Plaintiff's second amended complaint. *See* Dkt. No. 21. On March 7, 2024, the Court granted the Union's motion, dismissing, with prejudice, all claims against the Union, with the exception of Plaintiff's claims under the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, or the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-101 *et seq.*, over which the Court lacks jurisdiction.  *See* Dkt. No. 36; *Bledsoe v. New York City Transit Auth.*, No. 23-CV-00775 (HG) (JAM), 2024 WL 989845 (E.D.N.Y. Mar. 7, 2024), *appeal dismissed* (Text Order dated July 12, 2024).

Discovery commenced on March 25, 2024.  *See* Minute Entry dated Mar. 25, 2024.  The Court certified that discovery was complete on October 2, 2024.  *See* Text Order dated Oct. 2, 2024.

On November 15, 2024, NYCTA filed a request for a pre-motion conference in anticipation of its motion for summary judgment.  *See* Dkt. No. 97.  On November 22, 2024, Plaintiff filed several documents (Dkt. Nos. 101, 102, 103, and 104), which the Court construed—given Plaintiff's *pro se status*—as a response to NYCTA's pre-motion letter in anticipation of a motion for summary judgment (Dkt. No. 97) and a motion for summary judgment.  *See* Text Order dated Nov. 25, 2024.

Following the Court's adoption of a briefing schedule, on January 20, 2025, NYCTA filed its motion for summary judgment (Dkt. No. 111), along with its notice to a *pro se* litigant who opposes a motion for summary judgment, pursuant to Local Civil Rule 56.2 (Dkt. No. 112-1).  On February 20, 2025, Plaintiff filed his opposition to NYCTA's motion.  Dkt. No. 117.  On the same date, Plaintiff filed his response (Dkt. No. 119) to NYCTAs' Local Civil 56.1 Statement of Undisputed Material Facts (Dkt. No. 111-1).

On March 7, 2025, the Court held a conference to address the parameters of motion practice with the parties.  *See* Minute Entry dated Mar. 7, 2025.  At that conference, the Court granted, in part, NYCTA's motion to strike Plaintiff's February 20, 2025 opposition (Dkt. No. 117).  *See id.*

The Court noted that Plaintiff's submission was 64-pages single-spaced and failed to comply with the Court's prior order requiring that his submission be no more than 20 pages, as well as Local Civil Rule 11.1(b)(3) requiring that all documents be filed double-spaced. *See id.*; *see also* Text Order dated Nov. 25, 2024.

Following multiple extension requests, Plaintiff filed his opposition to NYCTAs' motion and his reply in support of his motion for summary judgment on April 20, 2025 and April 21, 2025. *See* Dkt. Nos. 130-139. On April 22, 2025, the Court issued the following order:

> The Court has reviewed the submissions filed by Plaintiff yesterday. See ECF Nos. 130, 131, 132, 133, 134. The opposition alone, ECF No. 131, totals 84 pages, which significantly exceeds the 20 additional pages previously ordered by this Court. *See* Nov. 25, 2024, Text Order. Troublingly, it represents a page length increase even though Magistrate Judge Marutollo held an in-person conference with the parties in which he reminded Plaintiff about the excessive length of his submissions. *See* Mar. 7, 2025, Min. Entry. In addition, the Court understands that Plaintiff has repeatedly submitted voluminous evidence directly to Judge Marutollo's Chambers.
>
> Plaintiff's conduct indicates a willful defiance of Court Orders and represents an abuse of the extraordinary flexibility both the undersigned and Magistrate Judge Marutollo have shown him. *See, e.g.*, Mar. 24, 2025, Text Order (Judge Marutollo warning Plaintiff against "making any further incendiary and wholly unwarranted attacks against the Court"). Plaintiff is severely impeding the orderly resolution of this action. The above-referenced docket entries filed yesterday are hereby STRICKEN from the docket and will not be considered. In deference to Plaintiff's *pro se* status, the Court grants him one, final opportunity to file a combined opposition not to exceed 20 double-spaced pages. *See* Nov. 25, 2024, Text Order. He has already filed a response to [NYCTA's] Rule 56.1 statement, *see* ECF No. 119, and no further response will be accepted. Plaintiff must file his consolidated response on or before May 1, 2025. If Plaintiff's response exceeds 20 pages, it will be stricken, and the cross-motions will be considered without further papers from him.
>
> Notwithstanding Plaintiff's *pro se* status, further vexatious or abusive conduct from Plaintiff will result in the imposition of sanctions, up to and including the dismissal of this action. *See Sachs v. Matano*, No. 15-cv-6049, 2016 WL 4179792, at *7 (E.D.N.Y. July 15, 2016) ("[I]t is well settled that a party's status as a *pro se* litigant does not shield him from Rule 11 sanctions because one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." (quotation omitted)), *report and recommendation adopted*, 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016).

Text Order dated Apr. 22, 2025.

On May 1, 2025, Plaintiff filed documents in response to the Court's Order, including a revised motion for summary judgment. *See* Dkt. Nos. 141, 143. 144.

On May 8, 2025, the Court granted NYCTA's motion (Dkt. No. 142) to strike Plaintiff's May 1, 2025 submissions. Text Order dated May 8, 2025. In its order, the Court noted that Plaintiff "was permitted one final opportunity to file a response not to exceed 20 double-spaced pages," but "[d]espite the Court's clear Order and warning that additional vexatious and abusive conduct would result in the imposition of sanctions, Plaintiff proceeded to file over 250 pages." *Id.* (citing Dkt. Nos. 141, 143, 144). The Court therefore struck Plaintiff's filings at Dkt. Nos. 141, 143, and 144, which are not to be considered for purposes of this motion. *See id.*[10]

Additionally, on May 8, 2025, Plaintiff filed a motion to appoint counsel on his behalf in this matter. *See* Dkt. No. 146.

---

[10] In the May 8, 2025 Text Order, the Court added that

> To the extent Plaintiff is concerned about the submission of video evidence, [] he has already submitted many video files to Judge Marutollo's Chambers, which shall be considered as part of the forthcoming motions. In light of this Order, Plaintiff is specifically instructed not to file further papers unless he receives permission from Judge Marutollo. He is further directed not to send additional papers related to the cross-motions for summary judgment to [NYCTA], even if he does not file those papers with the Court. He is additionally directed not to contact Judge Marutollo's Chambers or this Chambers (via phone or email) in connection with the summary judgment motions. The Court is ordering these limits because Plaintiff's abusive conduct is creating an exceptional burden on Court resources, including in the Clerk's Office. Plaintiff is again warned that failure to comply with this Order will result in the imposition of sanctions. In light of Plaintiff's disregard for the Court's prior Order, Plaintiff is specifically warned that those sanctions may include dismissal of this action. Given the age of the cross-motions, which the Court has not been able to adjudicate because of Plaintiff's excessive filings, the Court terminates the motions docketed at ECF Nos. 102 and 111. This is for administrative convenience only; the cross-motions for summary judgment remain referred to Judge Marutollo for a report and recommendation as to his findings. NYCTA shall serve a copy of this Order on Plaintiff on or before May 9, 2025, and shall file proof of service by the same date.

Text Order dated May 8, 2025.

## II.    <u>Legal Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "There is 'no genuine dispute as to any material fact' where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material)." *Lange v. Dep't of Educ. of City of New York*, No. 17-CV-3443, 2018 WL 4636986, at *2 (S.D.N.Y. Sept. 26, 2018) (Sullivan, J.) (first quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244

16

(2d Cir. 1984))).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.

"A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor." *Zenith Radio Corp.*, 475 U.S. at 587; *see Anderson*, 477 U.S. at 251. "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'" *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980)).

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023) (citation and quotations omitted). "This is particularly true in the context of summary judgment, where, as we have recognized, 'it is not obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial.'" *Fredricks v. Shaheen*, No. 22-2480, 2025 WL 1949898, at *1 (2d Cir. July 16, 2025) (quoting *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999)). "This status does not, however, excuse a *pro se* litigant from making the showing required

to defeat summary judgment; he or she must offer more than 'bald assertions, completely unsupported by evidence' to overcome the motion." *Amigon v. Luzon*, No. 21-CV-02029 (PMH), 2025 WL 1952581, at \*4 (S.D.N.Y. July 16, 2025) (quoting *Wisdom v. Loiodice*, No. 17-CV-04837 (PMH), 2020 WL 4431590, at \*4 (S.D.N.Y. July 31, 2020)); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)).

## III. <u>The Motions For Summary Judgment</u>

### A. The Timeliness of Plaintiff's Claims

"Title VII requires individuals aggrieved by acts of discrimination in states like New York that have state or local employment discrimination enforcement mechanisms to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days 'after the alleged unlawful employment practice occurred.'" *Rowe v. New York State Dep't of Tax'n & Fin.*, 786 F. App'x 302, 304 (2d Cir. 2019) (quoting 42 U.S.C. § 2000e5(e)(1)). "For plaintiffs alleging unlawful discrimination or retaliation, discrete actions such as 'termination, failure to promote, denial of transfer, or refusal to hire are easy to identify' and are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "Claims falling outside this statute of limitations are time-barred unless they are subject to waiver, estoppel, or equitable tolling, or fall within the continuing violation exception to the 300-day rule." *Id.* (first citing *Zipes v. Trans World Airline., Inc.*, 455 U.S. 385, 393 (1982); and then citing *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).

Here, it is undisputed that Plaintiff filed his administrative complaint with the NYSDHR

and the EEOC on January 13, 2022.  Dkt. No. 111-1 ¶ 183; Dkt. No. 119 ¶ 183.  Three hundred days prior to January 13, 2022 is March 19, 2021.  Thus, claims resting on NYCTA's alleged acts of discrimination against Plaintiff occurring before March 19, 2021 are time-barred under Title VII's statute of limitations.  *See Rowe*, 786 F. App'x at 304; *see also Callender v. New York State Dep't of Motor Vehicles*, No. 23-CV-9314 (KPF), 2025 WL 1785839, at *9 (S.D.N.Y. June 27, 2025) ("[T]o the extent the underlying conduct related to Plaintiff's transfer requests occurred 300 days prior to Plaintiff's EEOC charge, such claims would be time-barred."); *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 581-82 (S.D.N.Y. 2017) (applying 300-day rule under Title VII's statute of limitations unless "the period has been equitable tolled or extended"); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 576 (E.D.N.Y. 2011) ("Courts strictly adhere to the 300-day filing period" (citing *Morgan*, 536 U.S. at 114)).

The claims at issue are not subject to waiver or estoppel, as NYCTA invoked Plaintiff's failure to exhaust his administrative remedies in its answer as well as in its motion for summary judgment.  *See* Dkt. No. 29 at 24 (asserting statute of limitations and failure to exhaust as second affirmative defense); Dkt. No. 111-47 at 22-24 (asserting same in memorandum of law in support of motion for summary judgment).  Nor are they subject to equitable tolling.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017)

"The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  *Id.* (citing *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)).  "[T]o secure equitable tolling, it is not enough for a party to show that he e*xperienced* extraordinary circumstances.  He must further demonstrate that

those circumstances caused him to miss the original filing deadline." *Watson*, 865 F.3d at 132 (citations omitted); *see also Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.").

Nothing before the undersigned supports a finding that Plaintiff's claims might be tolled. Plaintiff fails to raise factual dispute over whether NYCTA prevented him from in some extraordinary way from exercising his rights in filing his administrative complaint with the EEOC. To the contrary, the undisputed facts show that Plaintiff filed his administrative complaint with the EEOC and the NYSDHR without event. *See* Dkt. No. 111-1 ¶ 183; Dkt. No. 119 ¶ 183 (indicating that Plaintiff did not dispute the date he filed his administrative complaint with the EEOC and the NYSDHR and failing to raise any issue surrounding that filing). The facts, therefore, establish that equitable tolling is not warranted. *See Watson*, 865 F.3d at 132 (explaining that equitable tolling did not apply where the plaintiff—representing himself—mounted a "vigorous case" in the court at issue despite also being in immigration detention and fighting to prevent his deportation); *Callender*, 2025 WL 1785839, at *9 ("The mere fact that Plaintiff then sought to challenge this decision through an arbitration proceeding is not sufficient to toll the limitations period"); *Cherry v. City of New York*, 381 F. App'x 57, 58-59 (2d Cir. 2010) (finding claim untimely even though plaintiff had submitted complaints through the state agency's grievance procedures and through his union). Plaintiff's *pro se* status in and of itself does not merit equitable tolling in this matter either. *Watson*, 865 F.3d at 132 ("Nor can equitable tolling be premised on Watson's lack of education, *pro se status*, or ignorance of the right to bring a claim." (emphasis added)).

Nor can the continuing violations doctrine save Plaintiff's untimely allegations. "Under

the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012); *see also Rowe*, 786 F. App'x at 304 (articulating same standard); *Banks*, 81 F.4th at 259 (same). "Such an exception effectively delays the statute of limitations period for Title VII claims until the last act in furtherance of the discriminatory practice or policy occurs." *Allen v. New York State*, No. 2:24-CV-02800 (JS) (JMW), 2024 WL 4654220, at *3 (E.D.N.Y. Nov. 1, 2024).

"However, the continuing violations doctrine does not apply to discrete acts of discrimination, 'even if they are related to acts alleged in timely filed charges.'" *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247 (MKB), 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013) (quoting *Morgan*, 536 U.S. at 102). Absent compelling circumstances, "the courts of this Circuit have generally been loath to invoke the continuing violation doctrine[.]" *Percy*, 264 F. Supp. 3d at 582; *Cotz v. Matroeni*, 476 F. Supp. 2d 332, 356 (S.D.N.Y. 2007) ("Courts in the Second Circuit view continuing violation arguments with disfavor, and the doctrine's applicability outside of the Title VII or discrimination context is uncertain"); *Trinidad v. New York City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances"); *Cabrera v. New York City*, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." (citation omitted)).

These discrete acts can include "termination, failure to promote, denial of transfer, or refusal to hire." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Valtchev v. City of New York*, 400 F. App'x 586, 588-89 (2d Cir. 2010); *see also Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014) ("Actions that are 'discrete' and 'easy to identify,' such as 'termination, failure to promote, denial of transfer, or refusal to hire . . . constitute[ ] a separate actionable "unlawful employment practice,"' and cannot form the basis of a continuous and ongoing discriminatory practice that entitles a plaintiff to the continuing violation exception." (quoting *Morgan*, 536 U.S. at 114)).

Similar to equitable tolling, Plaintiff also fails to present a factual dispute as to whether any of his allegations fall within the continuing violation doctrine warranting its application. The undisputed facts exhibit a series of discrete actions involving Plaintiff prior to March 19, 2021: a transfer to the Yukon Depot in 2015 (Dkt. No. 111-1 ¶ 20; Dkt. No. 119 ¶ 20); a host of disciplinary actions between 2015 (Dkt. No. 111-1 ¶ 22; Dkt. No. 119 ¶ 22); denial of IOD status following the January 29, 2021 incident (Dkt. No. 111-1 ¶ 71; Dkt. No. 119 ¶ 71); being taken out of service and assigned to "other duties" following the January 30, 2021 observation ride, the associated DANs, and the grievance procedure and arbitration (Dkt No. 111-1 ¶¶ 75-104; Dkt. No. 119 ¶¶ 75-104); and denial of his request to work an overnight shift to attend a therapy session while performing other duties (Dkt. No. 111-1 ¶¶ 121-23; Dkt. No. 119 ¶¶ 121-23). Such actions constitute those occurring in a "particular moment in time," which are insufficient to invoke the doctrine. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 445 (S.D.N.Y. 2023); *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971 (RA), 2020 WL 1922624, at

*4 (S.D.N.Y. Apr. 21, 2020) (holding no continuing violation in allegations of failure to promote, failure to compensate for overtime, repeated transfers, and receipt of negative comments); *Malarkey v. Texaco, Inc.*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature.").

Accordingly, the undersigned respectfully recommends a finding that Plaintiff's allegations predating March 19, 2021 are time barred under Title VII's statute of limitations and thus should not be considered in evaluating the cross-motions before the Court.

### B.     Plaintiff's Title VII Discrimination Claims

Plaintiff's timely Title VII discrimination claims fail.  Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).  "Title VII's prohibition on sex discrimination encompasses discrimination based on sexual orientation[.]"  *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 89 n.2 (S.D.N.Y. 2024) (citing *Bostock v. Clayton County*, 590 U.S. 644, 651-52 (2020)); *Philpott v. State Univ. of New York*, 805 F. App'x 32, 33 (2d Cir. 2020) ("Sexual orientation discrimination is actionable under Title VII.").

"A plaintiff asserting a Title VII discrimination claim must allege facts showing that '(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision,' which can be shown 'by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'"  *Bledsoe v. Delta Air Lines, Inc.*, No. 23-CV-3146 (HG) (JAM), 2024 WL 1142321, at *2 (E.D.N.Y. Mar. 15, 2024) (quoting *Vega v. Hempstead Union*

*Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015)).  "At the summary judgment stage, Title VII discrimination claims are governed by the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)."  *Philpott*, 805 F. App'x at 33 (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012)); *Franco v. City of New York*, No. 19-CV-5905 (AMD) (CLP), 2025 WL 964014, at *5 (E.D.N.Y. Mar. 31, 2025).

Under the *McDonnell Douglas* framework, the plaintiff must first "establish a *prima facie* case of discrimination."  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  If an employee can make that showing, a presumption of discrimination arises and "the burden then shifts to the employer to 'articulate a legitimate, non-discriminatory reason' for the disparate treatment."  *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802).  "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination."  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804); *see also Bidon v. Collins*, No. 22-CV-00590 (KAD), 2025 WL 934849, at *4 (D. Conn. Mar. 27, 2025) ("[T]he *McDonnell-Douglas* test proceeds as follows: (1) the plaintiff 'bears the minimal burden of setting out a prima facie discrimination case,' (2) if the plaintiff satisfies their burden, the plaintiff 'is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action,' and (3) if the defendant proffers a legitimate, nondiscriminatory reason, 'the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.'" (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006))).

### i.    The First Step of the *McDonnell Douglas* Test

At the first stage of the *McDonnell Douglas* burden shifting analysis, the plaintiff must show "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he

suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Philpott*, 805 F. App'x at 33 (citing *Brown*, 673 F.3d at 150); *Banks*, 81 F.4th at 270. "The burden at this stage 'is not onerous.'" *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024) (quoting *Banks*, 81 F.4th at 270), *cert. denied* 145 S. Ct. 173 (2024). "Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its adverse action." *Id.* (quoting *Vega*, 801 F.3d at 83). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802).

Concerning Plaintiff's *prima facie* discrimination claim, NYCTA does not dispute the existence of the first two elements—that Plaintiff belonged to a protected class and that he was qualified for his position at NYCTA—and further concedes that Plaintiff's suspension in September of 2021 and his termination in February of 2022 constitute adverse employment actions. Dkt. No. 111-47 at 24, 26. Plaintiff claims additional adverse employment actions, including that NYCTA "posted public notices around the depot alerting [Plaintiff's] co-workers of his suspension."[11] Dkt. No. 102 at 15. NYCTA, in response, challenges the claimed adverse employment actions apart from the suspension and termination (Dkt. No. 111-47 at 26), and further that there was no "adverse action under the circumstances giving rise to an inference of unlawful

---

[11] Plaintiff also claims he suffered adverse employment actions when NYCTA: "refused to investigate Plaintiff's legitimate discrimination complaints; issued Plaintiff pretextual disciplinary charges; removed Plaintiff from service based upon pretextual disciplinary charges; denied Plaintiff's request for reasonable accommodation and forcing him to take accrued vacation time to attend mandated therapy sessions." Dkt. No. 102. A refusal to investigate a complaint "does not constitute an adverse employment action." *Brooks v. City of Utica*, 275 F. Supp. 3d 370, 379 (N.D.N.Y. 2017). Concerning Plaintiff's remaining claims, the undisputed facts show that these events occurred before March 19, 2021, and are therefore time barred. *See* Dkt. No. 119 ¶¶ 21-122.

discrimination." *Id.* at 17.  NYCTA additionally contends that Plaintiff's disciplinary history culminated in his termination, and that "there is no admissible evidence demonstrating pretext." *Id.* at 31-32.

### a.    Adverse Employment Action

"An adverse employment action is defined in the Second Circuit as a 'materially adverse change in the terms and conditions of employment.'" *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010) (quoting *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)).  "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (internal quotations and citation omitted).

Here, only Plaintiff's suspension in September of 2021 and termination in February of 2022 constitute adverse employment actions, which NYCTA does not dispute.  Dkt. No. 111-47 at 24, 26; *see Nidzon*, 752 F. Supp. 2d at 349; *Demoret*, 451 F.3d at 151.

Plaintiff's claim that NYCTA's posting of "public notices around the depot alerting [Plaintiff's] co-workers of his suspension" does not constitute an adverse employment action. First, Plaintiff fails to cite to any evidence that might support his assertion that NYCTA posted public notices around the depot.  Indeed—and apart from failing to file his own Rule 56.1 statement of undisputed fact—Plaintiff's response to NYCTA's Rule 56.1 statement does not reference any public notices posted by NYCTA, nor has he submitted any corroborating evidence to support his claim.  *See generally* Dkt. Nos. 111-1, 119; *see also Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc.*, 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) ("Conclusory statements, devoid

of specifics, are insufficient to defeat a properly supported motion for summary judgment."); *Jackson v. Mastrangelo*, 582 F. Supp. 3d 91, 99 (W.D.N.Y. 2022) ("[I]n opposing a motion for summary judgment, a party may not rely simply on conclusory statements").

But even if Plaintiff adequately supported his claims, the purported posting of public notices here does not constitute an adverse employment action. Plaintiff fails to show that the alleged event materially impacted his employment. It is undisputed that Plaintiff was already suspended from service in relation to the September 22, 2021 meeting (*See* Dkt. No. 111-1 ¶ 169; Dkt. No. 119 ¶ 169), and revocation of his access to NYCTA's properties and any posters advising employees as such did not "radically change the nature" of Plaintiffs work. *See Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 427 (E.D.N.Y. 2014).

To the extent that the undersigned infers that Plaintiff experienced embarrassment as a result of the presence of the posters, "being humiliated does not, without more, constitute an adverse employment action." *Adams v. New York State Dep't of Corr. & Cmty. Supervision*, No. 23-CV-05524 (HG), 2025 WL 1677347, at *5 (E.D.N.Y. June 13, 2025) (quoting *Pierre v. Napolitano*, 958 F. Supp. 2d 461, 481 (S.D.N.Y. 2013)); *see Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) ("Verbal humiliation, unfair criticism . . . do not rise to the level of adverse employment actions because they do not have a material impact on the terms and conditions of a plaintiff's employment[.]"); *Cotterell*, 64 F. Supp. 3d at 427 (explaining that a "bruised ego" does not constitute an adverse employment action).

Accordingly, the undersigned respectfully recommends that the only adverse employment actions giving rise to Plaintiff's discrimination claim were his suspension from service in September of 2021 and his termination in February of 2022.

**b.    Circumstances Giving Rise To An Inference Of Discriminatory Intent**

"The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 766 (E.D.N.Y. 2018) (quoting *Stratton v. Dep't for the Aging*, 132 F.3d 869, 878 (2d Cir. 1997)).  A plaintiff can meet his burden at the fourth prong "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega*, 801 F.3d at 87.  "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see Banks*, 81 F.4th at 271 ("[A] plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing . . . biased comments by a decisionmaker." (citations omitted)).

"Because the district court is not to resolve issues of fact on a summary judgment motion, 'its determination of whether the circumstances give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir. 2021) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).  Moreover, "it is not the role of federal courts to review the correctness of employment decisions or the processes by which those decision are made." *Sassaman v. Gamache*, 566 F.3d 307, 314 (2d Cir. 2009).  Rather, "[t]he law requires courts to respect an employer's decision to hire or fire employees according to its own criteria, so long as they do not

include unlawful discrimination." *Morales v. Bottling Grp., LLC*, 374 F. Supp. 3d 257, 269 (W.D.N.Y. 2019), *aff'd* 814 F. App'x 630 (2d Cir. 2020).

Here, the undisputed facts show that Plaintiff has failed to carry his burden in presenting circumstances giving rise to an inference of discrimination. First, it is undisputed that Plaintiff has never heard NYCTA's employees "make derogatory remarks to his face." Dkt. No. 111-1 ¶ 191; Dkt. No. 119 ¶ 191. Liberally construed, the Court might infer that Plaintiff's seeks to use the text messages received from Ms. Borrell, where Ms. Borrell told Plaintiff that "an operator said to [Ms. Borrell] [the operator] heard a sup [sic]" call Plaintiff a homophonic slur, to support his discrimination claim. But that text message constitutes inadmissible hearsay that does not fall into any applicable exception. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"); Fed. R. Evid. 803 (listing exceptions to the rule against hearsay); Fed. R. Evid. 804 (containing additional hearsay exceptions). Because Plaintiff has not offered any reason for why such a statement should be considered, the statements should be disregarded for the purposes of summary judgment. *See Little v. Cnty. of Nassau*, 708 F. Supp. 3d 252, 265 (E.D.N.Y. 2023) (explaining that it is the proponent's burden to prove that hearsay falls within an exception to be considered on summary judgment and collecting cases).

But even if the Court were to consider the text message, the result would be the same. Although "[v]erbal comments may give rise to an inference of discriminatory motivation," such comments have little probative value on whether a decisionmaker was "motived by the discriminatory sentiment expressed in the remark." *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 172 (E.D.N.Y. 2021). Moreover, stray remarks alone—even when made by a

decisionmaker—are insufficient to satisfy Plaintiff's burden in showing a prima facie case. *Id.* (citing *Fletcher v. ABM Building Value*, 775 F. App'x 8, 13 (2d Cir. 2019)). "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process." *Posner v. Sprint/United Mgmt. Co.*, 478 F. Supp. 2d 550, 557 (S.D.N.Y. 2007); *cf. Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010) (articulating same standard in affirming the district court's orders to exclude evidence of stray remarks in discrimination claim).

Plaintiff has not established a triable issue of fact that the supervisor referenced in the text message was in any decision-making capacity or was related to the adverse employment actions. *Taylor v. Dollar Tree Stores*, No. 18-CV-1306 (SJB), 2020 WL 2478663, at *11 (E.D.N.Y. May 13, 2020) (granting summary judgment for the defendant where "[t]he only evidence proffered for the alleged statement is [the plaintiff's] own deposition testimony," which "is insufficient to survive summary judgment."). Instead, the record is devoid of supporting evidence and context surrounding the message to establish discriminatory intent behind his suspension and termination. *See Adam v. Glen Cove Sch.*, No. 06-CV-1200, 2008 WL 508689, at *8 (E.D.N.Y. Feb. 21, 2008) (Bianco, J.) ("In short, there is not a scintilla of evidence that the decisionmakers who were involved in the decision to terminate the plaintiff, much less the Board of Education which voted to terminate plaintiff, had any knowledge of these incidents or were motivated in any way by plaintiff's race. Under such circumstances, the stray remarks by these non-decisionmakers are

insufficient, without other evidence, to raise an inference of discrimination."). Accordingly, Plaintiff fails to carry his burden in showing a prima facie discrimination claim with respect to comments made about his sexual orientation.

Plaintiff's attempts to show discrimination through comparison to purportedly similarly situated employees fares no better. A plaintiff seeking to establish an inference of discriminatory intent through less favorable treatment requires a comparator, who is not within Plaintiff's protected classes, that is "similarly situated in all material respects." *Morales*, 374 F. Supp. 3d at 269. "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Placide-Eugene v. Visiting Nurse Serv.*, 86 F. Supp. 3d 132, 148 (E.D.N.Y. 2015). "The 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem v. Parkinson*, 523 F. App'x. 19, 20 (2d Cir. 2013) (quoting *Ruiz v. Rockland County*, 609 F.3d 486, 494 (2d Cir. 2010)). "The question of whether two individuals are similarly situated may present a factual issue for the jury, but 'a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met.'" *Parrilla v. City of New York*, No. 09-CV-8314 (SAS), 2011 WL 611849, *8 (S.D.N.Y. 2011) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Plaintiff has not raised a dispute as to any material fact whether any of NYCTA's similarly situated employees, who were not part of Plaintiff's protected classes, were treated more favorably. In conclusory fashion and without any record or evidentiary support, Plaintiff claims that his "employment history is nothing short of greatness compared to similar[] situated non-black, non-homosexual male gendered operators" (Dkt. No. 119 ¶ 19); that "[t]wo non-black, non-homosexual

[bus operators were involved in] accidents [that] result[ed] in fatalities" but that those operators are still in service (*id.* ¶ 24); that "[b]lack and gay operators are not afforded the same 'emotional' experience as non-black non-homosexual operators" when their "[t]erms and conditions of employment were altered" (*id.* ¶ 103); that NYCTA allowed non-black, non-homosexual bus operators to work overnight after his request to do so was denied (*id.* ¶ 118); and that the arbitrator adjourned the October 14, 2021 arbitration session to October 21, 2021 because he was black (*id.* ¶ 177).

The bulk of Plaintiff's allegations fail to actually identify a similarly situated employee but rather consists of generalized and hypothetical statements that are unsupported and unconfirmable. *Id.* ¶¶ 19, 103, 119, 177. "[V]ague references to 'comparable [employees]' are not sufficient" to carry Plaintiff's burden at this stage. *See Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 115 (S.D.N.Y. 2022) (explaining that on summary judgment, a plaintiff must "actually identify a similarly situated employee"); *Placide-Eugene v. Visiting Nurse Serv. of New York*, 86 F. Supp. 3d 132, 149 (E.D.N.Y. 2015) (dismissing Title VII discrimination claim where allegations were unsupported by admissible evidence). Thus, those references to unidentified employees does not give rise to a dispute of over whether Plaintiff experienced discrimination compared to similarly situated employees such to defeat NYCTA's motion.

Plaintiff's attempted comparison to the two bus operators who were not terminated following fatal accidents is also inapposite. Plaintiff has not submitted any evidence that could lead the trier of fact to conclude that he was terminated for his history of being involved in accidents or collisions while operating a bus. Rather, Plaintiff acknowledges that his suspension and eventual termination was based on "insubordination, rude/inappropriate behavior, assault to a supervisor/manager, [and] failure to report to work and failure to comply," albeit contending that

it was unjustified.  Dkt. No. 119 ¶ 170.  Indeed, Plaintiff's submissions are entirely devoid of any allegation or evidence those two employees had a comparable history of disciplinary issues as to Plaintiff.  Plaintiff therefore has not established a "close resemblance of facts and circumstances to [his] and the comparator's cases."  *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) ("A proposed comparator is not similarly situated in all material respects unless she engaged in all of the same misconduct as plaintiff, or at least committed the most serious of the infractions for which the plaintiff was subjected to an adverse employment action" (internal quotations and citations omitted)).

At bottom, Plaintiff has failed to establish a *prima facie* case of discrimination because he cannot to raise a triable issue of fact as to whether NYCTA suspended and terminated his employment under circumstances giving rise to an inference of discrimination.  Because "[a] Title VII discrimination claim fails absent this *prima facie* showing," *see Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004) (Sotomayor, J.), NYCTA is entitled to summary judgment on Plaintiff's discrimination claims.  Accordingly, the undersigned respectfully recommends that NYCTA's motion be granted with respect to the Title VII discrimination claims, and that Plaintiff's motion be denied.

### ii.    The Second and Third Steps of the *McDonnell Douglas* Test

Although Plaintiff's claims do not survive the first step of the *McDonnell Douglas* analysis, the Court notes that summary judgment on the discrimination claim in favor of NYCTA is further warranted because NYCTA has explained a legitimate nondiscriminatory reason for the adverse employment actions, and because Plaintiff has not shown that a factfinder could conclude those reasons were pretextual.  The undisputed basis for Plaintiff's suspension and termination is Plaintiff's "insubordination, rude/ inappropriate behavior, assault to a supervisor/ manager, failure

to work, and failure to comply." Dkt. No. 111-1 ¶ 170; Dkt. No. 119 ¶ 170.  "Although at this step [the defendant] 'need not persuade the court that [it was] actually motivated by the proffered reason,'" *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 323 (S.D.N.Y. 2024) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981)), NYCTA has offered substantial undisputed evidence to support its reason.  *See, e.g.*, Dkt. Nos. 111-1, 119 ¶¶ 53-103 (exhibiting Plaintiff's encounter with Dispatcher Sarete and the ensuing disciplinary proceedings); *id.* ¶¶ 146-196 (exhibiting Plaintiff's attempted reinstatement and the events preceding suspension and termination).

After NYCTA offered this legitimate, nondiscriminatory reason, "[t]he presumption of discrimination arising from the *prima facie* case [] 'drops out of the analysis.'"  *Philpott*, 805 F. App'x at 34; *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107-08 (2d Cir. 2019) ("If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination").  Resolving all ambiguities and drawing all inferences in his favor, Plaintiff's conclusory and unsupported submissions do not create a material dispute of fact whether NYCTA's non-discriminatory reasons was "not the exclusive reason for the adverse employment actions." *Bart*, 96 F.4th at 574; *Joseph v. Owens & Minor Distribution, Inc.*, 5 F. Supp. 3d 295, 313 (E.D.N.Y. 2014) ("At this stage of the burden-shifting analysis, '[c]onclusory and speculative allegations will not suffice to demonstrate discriminatory intent.'" (quoting *Henny v. New York State*, 842 F. Supp. 2d 530, 553 (S.D.N.Y. 2012))), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).  The undisputed evidence shows that NYCTA presented consistent explanations for Plaintiff's suspension and eventual termination, which were predicated upon repeated instances of behavioral misconduct when interacting with other employees (Dkt. No. 111-

1 ¶¶ 170).  That reasoning was further sustained by the arbitrator presiding over the ensuing arbitration after Plaintiff's September of 2021 suspension from service.  *Id.* ¶ 185.

Plaintiff has failed to show that his suspension and subsequent termination had any connection to Plaintiff's protected statuses.  *See Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 213 (E.D.N.Y. 2009) (dismissing discrimination claims on summary judgment where the plaintiff failed to offer any rebuttal to the defendant's nondiscriminatory reason to show pretext).  Plaintiff thus has not satisfied his burden under the third step in the *McDonnell Douglas* framework to defeat NYCTA's motion even assuming he established a *prima facie* case of discrimination.  Accordingly, the undersigned respectfully recommends that NYCTA's motion for summary judgment be granted on Plaintiff's discrimination claim, and that Plaintiff's motion be denied.

### C.    Plaintiff's Title VII Retaliation Claims

"At the summary judgment stage, claims of retaliation brought under Title VII are analyzed under the burden-shifting framework set by the Supreme Court in *McDonnell Douglas*."  *McDonald v. Williams-Sonoma, Inc.*, No. 22-CV-4164 (HG), 2024 WL 4188980, at *5 (E.D.N.Y. Sept. 13, 2024) (citation omitted).  "Under the three-step *McDonnell Douglas* framework, '[f]irst, the plaintiff must establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'"  *Id.* (citing *Hicks*, 593 F.3d at 164); *see also Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023) (A plaintiff establishes a *prima facie* case of retaliation by showing "(1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action

or actions."). "A plaintiff's 'burden in this regard is *de minimis*.'" *McDonald*, 2024 WL 4188980, at *5 (citation omitted). "If [a] plaintiff meets this initial burden, 'a presumption of retaliation arises,' and the defendant must 'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* "If the defendant does so, then 'the burden shifts back to the plaintiff' who 'must show that the reason offered by the employer is merely pretext, and that the employer's desire to retaliate was [a] but-for cause of the challenged employment action.'" *Id.* (citing *Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 14 (2d Cir. Jan. 30, 2018); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

### i. The First Step of the *McDonnell Douglas* Test

The parties do not dispute that Plaintiff engaged in protected activity of which NYCTA was aware, consisting of the following the timely actions: Plaintiff's May 7, 2021 grievance alleging that his accommodation request for return of vacation time to attend therapy was denied because of his race and sexual orientation (Dkt. No. 111-1 ¶ 134; Dkt. No. 119 ¶ 134); that Plaintiff issued a "cease and desist letter" to NYCTA on November 1, 2021 (Dkt. No. 111-1 ¶ 180; Dkt. No. 119 ¶ 180); and that Plaintiff filed his administrative complaints with the NYSDHR and EEOC on January 13, 2022 (Dkt. No. 111-1 ¶ 183; Dkt. No. 119 ¶ 183).

NYCTA further concedes, and the undersigned agrees, that the following actions are colorable adverse actions taken against Plaintiff for the purposes of his *prima facie* claim: being "kept out" of passenger service in connection with his January of 2021 DANs; his inability to file a grievance complaining of discrimination; his suspension from duty in September of 2021

36

following the meeting with management personnel; posting notice that he was not permitted on NYCTA's non-public property; and his termination from employment in February of 2022.  Dkt. No. 111-47 at 33-34; Dkt. No. 102 at 21-22, 29; *see also Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."); *Collazo v. County of Suffolk*, 163 F. Supp. 3d 27, 52 (E.D.N.Y. 2016) ("Title VII's anti-retaliation provision is broader than its anti-discrimination provision and 'extends beyond workplace-related or employment-related retaliatory acts and harms'" (quoting *Hicks*, 593 F.3d at 165)).

Thus, the parties dispute whether Plaintiff has satisfied the fourth element in his *prima facie* case, that "there was a causal connection" between Plaintiff's protected activities and the adverse actions Plaintiff suffered.  *Rivera*, 743 F.3d at 24.

"Proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Fraser v. MTA Long Island Rail Rd.*, 307 F. Supp. 3d 105, 115 (E.D.N.Y. 2018) (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *Hicks*, 593 F.3d at 170.

Plaintiff has not proffered any direct evidence that the adverse employment actions taken against him were causally linked with his protected activities.  Plaintiff has not shown that any individual's decision to keep him out of passenger service, prevent him from filing a discrimination grievance, suspend him from duty, post notice that he was not permitted on NYCTA's premises,

37

or terminate him from employment were aware of Plaintiff's past grievances, cease and desist letters, or administrative complaints.  "[E]vidence that the specific decision-makers responsible for the adverse action were not aware of a plaintiff's protected activity is . . . relevant 'as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity.'"  *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 402 (S.D.N.Y. 2014) (quoting *Barney v. Consol. Edison Co. of New York*, No. 99-CV-823 (DGT) (SMG), 2009 WL 6551494, at *13 (E.D.N.Y. Oct. 1, 2009), *aff'd* 391 F. App'x 993 (2d Cir. 2010)); *see Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity[.]").

Notwithstanding the lack of direct evidence of causation, Plaintiff can establish a *prima facie* retaliation claim indirectly through evidence of temporal proximity between the protected activities and adverse employment actions.  "The Supreme Court has noted that '[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Fraser*, 307 F. Supp. 3d at 115 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  "The Second Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.'"  *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015) (quoting *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554-555 & n. 5 (2d Cir. 2001)).

Here, the undisputed facts exhibit a close temporal proximity between certain protected

activities and subsequent adverse employment actions.  Plaintiff filed a grievance alleging discrimination after he was denied an accommodation request in May of 2021 while assuming other duties.  Dkt. No. 111-1 ¶ 134; Dkt. No. 119 ¶ 134.  Plaintiff's September 22, 2021 suspension from passenger service came just over four months later.  Dkt. No. 111-1 ¶ 169; Dkt. No. 119 ¶ 169.  Plaintiff further issued his "cease and desist" letter on November 1, 2021 (Dkt. No. 111-1 ¶ 180; Dkt. No. 119 ¶ 180), and NYCTA purportedly posted notice that Plaintiff was prohibited from entering its premises on November 22, 21.  Dkt. No. 102 at 17; Dkt. No. 111-47 at 34. Finally, Plaintiff filed his administrative complaints with the NYSDHR and the EEOC on January 13, 2022, and was officially terminated from employment by NYCTA on or around February 4, 2022.  Dkt. No. 111-1 ¶ 6; Dkt. No. 119 ¶ 6.

Plaintiff has thus established, for purposes of his *prima facie* retaliation claim, temporal proximity between his protected activities and the three adverse employment actions showing causation to satisfy his "*de minimis*" burden under the first stage of the framework.  *See, e.g.*, *Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 247 (N.D.N.Y. 2010) (finding six months between protected activity and termination sufficient for prima facie retaliation claim); *Vega*, 801 F.3d at 92 (finding three month gap between EEOC complaint and alleged retaliatory act found to be sufficient); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) (collecting cases).

Accordingly, the undersigned respectfully recommends a finding that Plaintiff has established a *prima facie* retaliation claim.

### ii.    The Second and Third Steps of the *McDonnell Douglas* Test

"Once the plaintiff has established a *prima facie* showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Zann Kwan*, 737 F.3d at 845 (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)).

The undisputed facts show that NYCTA has carried its burden in this respect. NYCTA based Plaintiff's September 22, 2021 suspension on his "insubordination, rude/ inappropriate behavior, assault to a supervisor/ manager, failure to report to work, and failure to comply." Dkt. No. 111-1 ¶ 170; Dkt. No. 119 ¶ 170. Plaintiff's grievance and appeal of that decision resulted in an arbitration, where the arbitrator issued an award sustaining Plaintiff's termination based on a finding of just cause. Dkt. No. 111-1 ¶ 185; Dkt. No. 119 ¶ 185. Finally, the notices of Plaintiff's ban from NYCTA's premises were posted after Plaintiff had undergone disciplinary proceedings in connection with his September 22, 2021 suspension. Dkt. No. 111-1 ¶¶ 170-180 (exhibiting that Plaintiff grieved the suspension, attended Step I and Step II meetings and hearings in connection with the charges, and appeared for an arbitration between his suspension and serving his cease and desist letters); Dkt. No. 119 ¶¶ 170-180 (same). The undersigned thus respectfully recommends a finding that NYCTA has posited legitimate nonretaliatory reasons for the adverse actions taken against Plaintiff.

Once the defendant articulates its non-retaliatory reason, the burden shift back to the plaintiff to show that that reason "is a mere pretext for retaliation." *Zann Kwan*, 737 F.3d at 845 (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). "Unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. "The plaintiff may demonstrate that the defendant's retaliation was a 'but-for' cause of the adverse employment action by setting forth 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action' from which it could be concluded that the defendant's explanations were mere pretext." *Collazo*, 163 F. Supp. 3d at 53-54 (quoting *Zann*

*Kwan*, 737 F.3d at 846).  Critically, however, "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage."  *Montanez v. McDean LLC*, 770 F. App'x 592 (2d Cir. 2019) (quoting *Zann Kwan*, 737 F.3d at 847).

Here, Plaintiff's submissions do not create any dispute whether NYCTA's explanations for the adverse actions taken against Plaintiff were based on anything but those nondiscriminatory reasons it articulated.  Plaintiff has presented no evidence that shows a weakness, implausibility, inconsistency, or contradiction in NYCTA's nonretaliatory reasons for those adverse employment actions close in time to his protected activity.  Reviewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the record is devoid of any evidence that might raise a triable issue of fact on whether NYCTA's reasoning was pretextual apart from temporal proximity.  Courts have repeatedly held, however, that reliance on temporal proximity alone is insufficient to satisfy a plaintiff's burden at the third stage of the *McDonnell Douglas* framework.  *See, e.g.*, *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 50 (2d Cir. 2025) ("To survive summary judgment at this stage, [a Title VII retaliation claimant] cannot rely solely on temporal proximity."); *Dixon v. Int'l Fed'n of Accts.*, 416 F. App'x 107, 110 (2d Cir. 2011) (explaining temporal proximity alone is insufficient to establish pretext); *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 344 (S.D.N.Y. 2020) (same); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 284 n.30 (E.D.N.Y. 2013) (same); *Fraser*, 307 F. Supp. 3d at 116 (same); *Giscombe*, 39 F. Supp. 3d at 403 (same).

Because Plaintiff offers no other evidence of retaliatory intent apart from the timing between the events, Plaintiff fails to show retaliation was the but-for cause for the adverse employment actions taken against him.  *See Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 394 (S.D.N.Y. 2022) (stating that a plaintiff may rely on evidence comprising his *prima facie* case

including temporal proximity to defeat summary judgment, but that "temporal proximity alone is insufficient to defeat summary judgment at the pretext stage").  Plaintiff thus has not created a dispute of material fact that might lead a fact finder to conclude that he has established a Title VII retaliation claim.

Accordingly, the undersigned respectfully recommends that NYCTA's motion for summary judgment on Plaintiff's retaliation claim be granted.

### D.    Plaintiff's ADA Claims

"The ADA prohibits discrimination against 'a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"  *Brizzi v. Utica Mut. Ins. Co.*, 529 F. Supp. 3d 44, 51 (E.D.N.Y. 2021) (quoting 42 U.S.C. § 12112(a)).  "Discrimination under the ADA includes adverse employment actions based on an employee's disability, and 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'"  *Id.* (quoting 42 U.S.C. § 12112(b)(5)(A)).  Like claims brought under Title VII, those alleging failure to accommodate are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Verne v. New York City Dep't of Educ.*, 697 F. Supp. 3d 30, 55 (S.D.N.Y. 2023) (citing *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)).

Under the ADA, a *prima facie* claim for disability discrimination based on a failure to accommodate consists of a showing that "(1) [the plaintiff] is a person with a disability under the meaning of [the ADA] (2) an employer covered by the statute had notice of his disability; (3) with

reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky*, 921 F.3d at 352 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (same).

Here, Plaintiff cannot establish a *prima facie* claim for failure to accommodate because the undisputed facts do not show that Plaintiff's alleged disability is encompassed by the ADA or that NYCTA had sufficient notice of that disability. Concerning the first element of a *prima facie* failure to accommodate claim, a plaintiff establishes that he is disabled within the meaning of the statute by "(1) show[ing] that [he] suffers from a physical or mental impairment, (2) identify[ing] the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that [his] impairment substantially limits the major life activity previously identified." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 132 (E.D.N.Y. 2015) (Bianco, J.) (internal quotations and citations omitted).

The undisputed facts only show that Plaintiff was diagnosed with and entered treatment for PTSD prior to his employment with NYCTA. Dkt. No. 111-1 ¶¶ 3-5; Dkt. No. 119 ¶¶ 3-5. Plaintiff fails to present an issue of triable fact, however, that his PTSD substantially limited any major life activity previously identified. Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Anderson*, 93 F. Supp. 3d at 133 (quoting 42 U.S.C. § 12102(2)); *Hughes v. City of New York*, No. 20-CV-3341 (AMD) (RLM), 2021 WL 7542440, at *3 (E.D.N.Y. Aug.

25, 2021).

Plaintiff's submissions are entirely devoid of any assertion that his PTSD inhibits one of or an activity akin to those exemplified in the statute.  Rather, the undisputed facts show that Plaintiff was able to successfully complete all major life activities without complaint, as well as his duties and obligations as an employee of NYCTA from when he was hired in 2014 to his first request for an accommodation in 2021.  *See* Dkt. No. 111-1 ¶¶ 6-122; Dkt. No. 119 ¶¶ 6-122.  To the extent that Plaintiff claims his PTSD resulted in "retraumatization" and "heightened sensitivity" at points during his employment, the undisputed facts show that despite these symptoms, Plaintiff was able to continue in his capacity as a bus operator immediately after they were triggered.  Dkt. No. 111-1 ¶¶ 41, 58, 60, 69, 99, 101; Dkt. No. 119 ¶¶ 41, 58, 60, 69, 99, 101.  Indeed, on the day of the January 29, 2021 encounter with the bus passenger, as well as the day after, Plaintiff continued in passenger service as a bus operator.  A finder of fact could therefore not determine that Plaintiff was disabled under the ADA based on the evidence presented.  The undersigned therefore respectfully recommends that NYCTA be granted summary judgment on Plaintiff's ADA claims.[12]

But even if Plaintiff were disabled under the statute, the undisputed facts do not show that NYCTA had notice of his disability.  It is "elemental that an employer could not have discriminated against a plaintiff *because of* [his] disability if it was unaware that the plaintiff was, in fact, disabled." *Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-CV-1389 (ENV) (WDW), 2009 WL

---

[12]  To the extent that Plaintiff is construed to assert ADA discrimination based upon an adverse action, his claims fail for the same reason. *See McMillan*, 711 F.3d at 125 ("To establish a *prima facie* case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.").

2602462, at *14 (E.D.N.Y. Aug. 21, 2009) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 n. 7 (2003)).  "While notice under the ADA . . . need not be precise[,] it must put the [defendant] sufficiently on notice of the existence and nature of the disability." *Goonewardena v. New York*, No. 05-CV-8554 (PKC) (FM), 2008 WL 4090467, at *10 (S.D.N.Y. Aug. 26, 2008) (internal quotations and citations omitted).

Nothing before the Court shows that NYCTA was aware of his purported PTSD at any point between when Plaintiff was hired and his requests for any accommodation.  Indeed, the parties do not dispute that Plaintiff discontinued his treatment for PTSD with Safe Horizon in July of 2013.  Dkt. No. 111-1 ¶ 5; Dkt. No. 119 ¶ 5.  Plaintiff has not submitted any corroborating evidence that he informed NYCTA of his PTSD or cited it as a basis for his requests for accommodations.  To the contrary, Plaintiff's states that his request for IOD status was based on the January 29, 2021 incident with the passenger on his bus, and that his request to work overnight shifts was to enable him to attend counseling pursuant to the arbitrator's award placing him on "other duties," which he accepted.  Dkt. No. 119 ¶¶ 71, 121.  The evidence before the Court therefore could not lead a finder of fact to determine that NYCTA was on notice of Plaintiff's PTSD to establish a *prima facie* claim for discrimination based on a failure to accommodate.

Accordingly, the undersigned respectfully recommends that NYCTA be granted summary judgment on Plaintiff's ADA claims, and that Plaintiff's motion be denied.

### E.    Plaintiff's Motion Should be Denied In Its Entirety

As discussed above, the undersigned respectfully recommends that Defendant's motion be granted in its entirety with respect to all outstanding claims because the record does not show any dispute of material facts.

The undersigned has also considered Plaintiff's cross-motion on its own merits, viewing

the evidence in the light most favorable to Defendant and drawing all reasonable inferences in its favor. *Weyant*, 101 F.3d at 854 (explaining standard); *Sutera*, 73 F.3d at 16 (same); *see also Douglas v. Harry N. Abrams, Inc.*, No. 13-CV-2613 (VSB), 2018 WL 1406616, at *1 (S.D.N.Y. Mar. 19, 2018) (granting the defendant's cross-motion for summary judgment because the plaintiff failed to raise a dispute of material fact). For the same reasons warranting summary judgment in Defendant's favor, as explained above, Plaintiff's cross-motion for summary judgment should be denied because he has failed to offer sufficient evidence to sustain his claims at this stage. *See White v. Roosevelt Union Free Sch. Dist. Bd. of Educ.*, No. 15-CV-1035 (JS) (JMW), 2025 WL 552744, at *20 (E.D.N.Y. Feb. 19, 2025).

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied in its entirety.

## IV.   Plaintiff's Motion to Appoint Counsel

On May 8, 2025, Plaintiff filed an application styled as a motion "to appoint counsel," which asked the Court to "allow and accept this motion . . . in response to the Court's order that Plaintiff has received from NYCTA's representing attorney." Dkt. No. 146 at 1. The motion raises 19 bullet points, including claims that "Courts denied all Plaintiff's request to appear in-person and scheduled telephonic conferences accommodate [*sic*] [NYCTA's] [*sic*] representing attorneys," that he "had been faced [*sic*] with judicial prejudice and bias," that "Courts had barred Plaintiff (unjustifiably) to refrain from calling the Chambers of judges and Courtroom Deputy," that "[p]artiality and integrity of the Courts in servicing Plaintiff has been compromised because Plaintiff is without legal representation," and that "[r]equest should be granted as it is granted to criminals of the court, to be appointed attorney [sic]. The actions are supported by the Sixth Amendment to the U.S. Constitution." *Id.* at 1-2.

46

"[I]t is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (citing *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)); *see, e.g.*, *Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 403 (E.D.N.Y. 2014) ("There is no right to counsel in a civil case."); *United States v. Sash*, 581 F. Supp. 2d 647, 649 (S.D.N.Y. 2008) ("There is no right to the appointment of counsel in civil cases."); *United States v. Vilar*, 979 F. Supp. 2d 443, 445 (S.D.N.Y. 2013) ("The Sixth Amendment, however, by its terms, is limited to 'criminal prosecutions.'   There is thus no Sixth Amendment right to counsel in civil cases." (internal citations omitted)); *Floyd v. Cosi, Inc.*, 78 F. Supp. 3d 558, 562 (E.D.N.Y. 2015) ("In most civil cases, including employment discrimination actions, there is no federal constitutional right to civil counsel."); *Just. v. Kuhnapfel*, 982 F. Supp. 2d 233, 234 (E.D.N.Y. 2013) ("Although the Constitution guarantees criminal defendants a right to counsel in their criminal case, there is no constitutional right to counsel in a civil case.").

Here, Plaintiff—who brought this action and is not faced with imprisonment—is not entitled to counsel, particularly given that the undersigned respectfully recommends that NYCTA's motion for summary judgment be granted.  Plaintiff's other allegations—related to the scheduling of conferences and the alleged "judicial prejudice and bias"—are completely devoid of substance and need not be addressed further.  *See Burhans v. Amler*, No. 06-CV-8325 (SCR), 2009 WL 10741846, at *2 (S.D.N.Y. May 14, 2009) ("The Court takes accusations of bias and prejudice very seriously; it is a duty of this Court to protect against even the appearance of impropriety that might thwart confidence in our judicial system . . . The Court harbors no prejudice or bias toward the plaintiff and the evidence marshaled by [the plaintiff] does not imply otherwise.").  Further, as noted above, the Court has previously warned Plaintiff against making any further incendiary and

47

wholly unwarranted attacks against the Court.  Future attacks against the Court may result in sanctions.

Plaintiff's motion to appoint counsel is therefore denied.[13]

## V.    **Conclusion**

Accordingly, the Court respectfully recommends that NYCTA's motion for summary judgment be granted in its entirety, and that Plaintiff's motion for summary judgment be denied in its entirety.  Further, Plaintiff's motion to appoint counsel is denied.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Defendant's counsel to serve a copy of this Report and Recommendation by mail and email on Plaintiff and to file proof of service on ECF by July 22, 2025.  Copies shall be served at the following address:

> Anthony Bledsoe
> 7 Dekalb Ave. Apt. #16A
> Brooklyn, NY 11201
> Email: abledsoe422@gmail.com

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gonzalez.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

---

[13] Because a motion to appoint counsel is non-dispositive, this Court will adjudicate it by order pursuant to 28 U.S.C. § 636(b)(1)(A), rather than by issuing a report and recommendation.  *See, e.g.*, *Griffin o/b/o C.T.M. v. Syracuse City Sch. Dist.*, No. 24-CV-1044 (GTS) (MJK), 2024 WL 4198371, at *4 (N.D.N.Y. Sept. 16, 2024), *report and recommendation adopted*, 2024 WL 4694109 (N.D.N.Y. Nov. 6, 2024); *Mulgrew v. U.S. Dep't of Transportation*, 717 F. Supp. 3d 281, 284 (E.D.N.Y. 2024) (collecting cases).

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York                    **SO ORDERED.**
              July 21, 2025

                                                       */s/ Joseph A. Marutollo*
                                                     JOSEPH A. MARUTOLLO
                                                     United States Magistrate Judge