UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
ANTHONY BLEDSOE,
(JAM)
Plaintiff,
-against
NEW YORK CITY TRANSIT AUTHORITY
and AMALGAMATED TRANSIT UNION LOCAL 726,
Defendants.
----------------------------------------------------x

August 19, 2025

The Honorable Hector Gonzalez
United States Federal District Judge
United States District Court
Eastern District of New York
Theodore Roosevelt United States Courthouse
Courtroom: 6A South
225 Cadman Plaza East
Brooklyn, New York 11201

23 CV 775 (HG)

*** Filed ***
02:27 AM, 20 Aug, 2025
U.S.D.C., Eastern District of New York

Clerk's Office
Filed Date: 8/20/2025
Received: 8/20/2025 CCF

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

*Possible Duplicate

## Motion Request for the objections to Judge Marutollo recommendation

Re: Bledsoe v. New York City Transit Authority et al., No.: 23-cv-00775 (HG)(JAM).

Dear Judge Gonzalez,

I am Anthony Bledsoe and the Plaintiff in the mentioned action against Defendants,

New York City Transit Authority et al 23-cv-00775 (HG)(JAM). Please allow and

accept this motion filed on August 19, 2025, in response of objecting the

recommendation to the court's order that Plaintiff has received from Defendant's

representing attorneys On July 21, 2025. Plaintiff request that his motion be honored for the following reasons:

Magistrate Judge Marutollo does not have the facts of Plaintiff's claims and Plaintiff's case correct. Refer to Page. 4 of

Magistrate judge's recommendation. Judge Marutollo stated that a Marasy Sarete showed his badge twice and ID card.  The statement is a statement, to which is false. The Individual never gave the name" Sarete" at all. The unidentified Individual gave the name Sorrento. In addition, the individual's  card that he

presented to Plaintiff was severely damaged. It was in the right of the Plaintiff to ask for Sorrento's  Pass number— as it is the only way in which authorize

personnel can learn of another authorize person's true identity. MTA personnel do not study badges and therefore it is not the proper way to learn of someone true identity.

Magistrate Judge Marutollo dangerous misunderstanding of the one -hour rule. Refer to page. 9 of his recommendation.

The one- hour rule **only applies to bus operators that have been given assigned work for the day or who have a designated run that they have bidded on. The one -hour rule only applies to operators who have appointments to go to Zarega that have have achieve post medical clearance to attend Zarega**. Plaintiff did not achieve medical clearance, receiving his fit-for-duty certificate or the achievement of receiving his medical examiner's certificate, to which is the only pathway to him being allowed to attend Zarega and part take in any re-certifications and re-qualifications. On the G-46, the medical doctor is asked the question under the Occupational Health Services Determination portion, **Employee is medically qualified to perform**. It then prompts the Medical Doctor to check the relevant box in each category. No boxes were checked. There is an "X" drawn throughout the entire portion of the G 4 (refer to Exhibit 16 of the response/ rebuttal to the NYC Transit Authority of 08/24/23). Plaintiff did not achieve medical clearance making him ineligible to participate or partake in any qualifications and re certifications. The orders of the MAC were to come back to the MAC with the requested requisite documentation that they requested from management. Management failed to comply with the demands and instructions of MAC. The hours of operations of the MAC are from 0800hrs to 1600hrs Monday thru Friday with the medical laboratory on 180 Livingston street that is open 24-hours. There is no prescribe

time to which an operator has to report to work go to the MAC. Judge Marutollo's assessment of the situation that occurred on September 21, 2021, is false. Plaintiff was not Late to Zarega or anywhere. There was no where for him to report to.

   Plaintiff was told by the union under the directive of management to come in the following day September 22, 2021, and write a G-2 stating why he did not go to Zarega. An operator cannot attend Zarega without medical clearance period. Plaintiff could not — even if he wanted to, to go and see management because EVP George Botts and Paul LaPolla were not in the union offices and as per the CBA, Plaintiff could not see management without union representation. Botts and LaPolla was paid for the day as if they were at work but were engaging in relations unrelated to the Transit Authority and u related to Union affairs. Actions are violative of MTA policy. **They were not on a properly approved day off.** Actions are theft of services and wages with management's complicity. Botts also informed plaintiff that no one in management would be in the office on September 21, 2021 to see him and that he was to come in— not report to, the depot on September 22, 2021.

Marutollo fails to draw the conclusion that the infractions are violative of MTA policy and would not admit that the Transit Authority issued out infractions due to Plaintiff's ability to speak out against the unlawful practices that the transit

authority wanted plaintiff to engage in and that the infractions infractions were issued out maliciously and failed to manufacture some kind of non-discriminatory legitimate reason for the 5 infractions issued on September 22, 2021. Plaintiff has cited on numerous occasions the ruling of Cortes v. New York City Transit Authority and it mentions and refers to the reinstatement process.

Plaintiff Objects to the recommendation in it's entirety because

1. Plaintiff requested the hard copy of the my timesheet of January 30, 2021**, to show the courts that Plaintiff was never operating bus 8577**. The Operation of bus 8577 was on January 29, 2021 only.

2. Plaintiff requested the original hard copy of the vacation day "VAD**" book to show the entries, as it listed Plaintiff's name, pass number and the word "restricted"**.

3. Plaintiff requested the date of filing, handling and findings of the internal EEO with the Department of Diversity and Civil Rights ("DDCR").

4. Plaintiff requested the camera footage of January 29, 2021 and January 30, 2021.

5. Plaintiff requested the fit-for-duty that medically approved to partake in the re-certifications and re-qualifications on September 20, 2021 and to grant him attendance at Zarega on September 21, 2021. Plaintiff requested the completed Medical Examiner's Certificate ("MSCA 5876/ MEC") **certifying** that Plaintiff met federal standards as per FMCSA and USDOT to operate commercial vehicles.

Plaintiff requested for the original hard copy of my time sheet of January 30, 2021 to show and prove to the courts that the investigations of that of the NYC Transit Authority, were that of shams, false findings and investigations . From the time sheet of January 30, 2021, the courts would have seen that I Anthony Bledsoe, Plaintiff of the above referenced matter, was not even operating 8577. 8577 is a bus that is used strictly for **Select- Bus-Service (S79)**. I Anthony Bledsoe only operated bus 8577 on Friday, January 29, 2021 but not on Saturday January 30, 2021. Said documentation would have marked the third act of falsification. The first act in June 22, 2018 where AGM Innocente and SLD LaMotta lied about the encounterment; Never wrote in the G-2 that he did not properly identify, whistled at me started mimicking my mannerisms. Yet in the recording of July 10, 2018 (via USB Flash Drive) he admits everything. The Second act of falsification being the infraction of November 7, 2020, to which a customer (allegedly) took pictures of Plaintiff sent them to depot and reported a bus mysteriously in the Staten Island Mall thru way, a road that is utilized for multiple bus lines in Staten Island. It ( the complaint) was alleged to have been reported between the hours 1:00-1:30am two days later to SLD John Spero. I requested for the retrieval of the Vacation Day ("VAD") book, to show the courts that besides the name of Anthony Bledsoe, the courts would see "Bledsoe" "076017" and the word "Restricted". I requested the VAD book to show that the entries were in SLD Spero's handwriting not GSS Francis. The request was denied.

**<u>Appealing charging against the NYC Transit Authority with an arbitration and filing claims of Discrimination against the NYC Transit Authority, are two different types of grievances.</u>** They are not the same.

Arbitrators cannot preside over cases of discrimination. They do not have the jurisdiction to do that. Said filing, said grievance must go through the DDCR — Department of Diversity and Civil Rights See Exhibit 34 of the rebuttal/ response to the NYC Transit Authority of 08/23/24. As stated, in my rebuttal/ response to the NYC Transit Authority of 08/24/23, The Department operates in being compliant with the Federal Transit Administration (FTA) Civil Rights guidelines, to ensure that all discriminatory concerns or complaints by applicants, employees, contractors and customers are responded to and thoroughly investigated in a timely manner. The DDRC never operates through any step I or step II pre-arbitrations or Arbitrations, nor is there some-kind of arbitrator in the investigatory process. Arbitrators cannot preside over any discriminatory claims. (and excuse any typos that have been written and submitted by me to the courts, regarding said issue).

The investigatory process would not include going before an arbitrator and waiving Plaintiff's rights to engage in protective activity, but would include/ entail the Chief Diversity and inclusion Officer, Mr. Gardner reporting to the MTA President and CEO, Janno Leiber ("Leiber").

In sum, Plaintiff requested the date of which the internal EEO was filed with the DDRC. I requested the date of when the investigation was initiated. Plaintiff requested the date of which Mr. Gardner conducted his investigatory process. Plaintiff requested the date of which, Chief Diversity and inclusion Officer, Mr. Gardner reported to MTA President and CEO, Janno Leiber, Mr. Leiber. I requested the findings and report of the said investigation. To date, the NYC Transit Authority and its representing attorneys have failed to furnished the finding of said report. Nevertheless, the courts certified that discovery was complete.

In the matter of January 29 & 30 2021, we live in a world that is technologically advance. The NYC Transit Authority archives everything. Yet they did not archive the events that took place on January 29 & 30 of 2021, respectively. The footage was destroyed enabling the courts and Plaintiffs to see, that the footage that was captured, would have shown that the events surrounding January29, 2021 and January 30, 2021, would have been congruent to the narrative of Plaintiff. Additionally, footage would have shown that Plaintiff ( Anthony Bledsoe or B/O 076017) **was not** operating bus 8577 on both working days of January 29, 2021 and January 30, 2021. Footage was never retrieved and discovery was declared complete (nevertheless). I maintained professionalism. I maintained being respectful of the court —even though discovery was not complete.

In the matter of re-qualifications and re-certifying, NYC Transit has yet to produce to Plaintiff or the courts, the fit-for-duty certificate / G46, that would have granted Plaintiff medical clearance to partake in said re-certifications and qualifications, involved in the reinstating of Plaintiff's safety -sensitive position on September 21, 2021 at Zarega. NYC Transit Authority in addition, has been unsuccessful in furnishing the Medical Examiner's Certificate, thus proving Plaintiff was never medically cleared and making Plaintiff in violation of 49 CFR 391.41- 49 CFR 391.49, to operate the city's commercial vehicles ( buses) on the roadways, highways tunnels, bridges etc. Exhibit O (1)(2) is a completed Medical Examiner's Certificate ("MCSA 5876"/ "MEC")from the United SatesPostal Service ("USPS"), that was complete by a medical physician who is FMCSA registered. Exhibit M is the G46/ fit-for-duty certificate that was rejected on September 20, 2021, to which Plaintiff **<u>did not</u>** achieve medical clearance and therefore, **<u>did not</u>** achieve, the obtaining of the Medical Examiner's Certificate ("MCSA 5876/MEC"). Discovery was still certified as complete, even though defendants were unsuccessful in supplying vital and crucial document to plaintiffs.

Judge Marutollo fails to acknowledge and examine all discriminatory practices and instances that Plaintiff cited in his lawsuit. Plaintiff cites a multitude of instances to which he was treated differently than compared to his non- black, non- gay counterparts.

Defendant NYCTA contends that "Plaintiff's transcript of record ("transcript")" reflects numerous operational and disciplinary infractions..." However, Plaintiff's transcript does not contain truthful information surrounding the events that took place, which resulted in Defendant NYCTA issuing Plaintiff harsh and unjust violations and corrective action. Throughout his employment tenure, Plaintiff observed that Defendant NYCTA engaged and continues to engage in discriminatory practices with respect to its investigations. Specifically, Plaintiff has observed that Defendant NYCTA frequently favors non-black, non-homosexual bus operators over Black homosexual employees. Furthermore, the arbitrators selected by Defendants NYCTA and ATU, typically find in favor of NYCTA management despite the evidence provided in the employee's favor. Contrary to Defendant NYCTA's contention, Plaintiff was only involved in five accidents—two of which were deemed "unpreventable."

While portraying Plaintiff as a deficient Bus Operator, Defendant NYCTA conveniently fails to mention other bus operators who were involved in fatal accidents but were not disciplined as harshly as Plaintiff. For example, Caucasian Bus Operator Oktawiusz Pokrzywa ("Pokrzywa") was involved in a "knock down," which resulted in a fatality. (See Exhibit C of the rebuttal/ response to the NYC Transit Authority of 8/24/23).. Significantly, Defendant NYCTA did not take Pokrzywa out of service and instead ordered him to perform "other duties" while investigating the matter. Upon completion of Defendant NYCTA's investigation, Pokrzywa was reinstated as a Bus

Operator. Notably, pursuant to Defendant NYCTA's policies, if a Bus Operator has a "knock down" or hits a pedestrian causing serious injury and/or death, the Bus Operator is not reinstated.

Plaintiff performance as an operator was exemplary, compared to the Second Non - Black, Non- Homosexual male gendered bus operator who killed 70-year-old women, while driving the Sim4c (formerly X17), who is still operating the bus. Refer to Exhibit K of the Rebuttal/ Response to NYC Transit Authority, dated August 24, 2023. visit ny_scoop via Instagram to see live footage. Date: June 7, 2023.

Plaintiff was in five (5) accidents two (2) of which were deemed unpreventable. On March 27, 2017 Bus Operator Kamish, Thomas of Jewish decent, crashed bus 4124 in the depot and was never faced with corrective actions or was sent to Zarega Bus facility and sent to the MAC/ OHS for "a code" for the accident he had in depot and the significant exterior damage he brought to the bus. Mike Donahue and Paul LaPolla brought the bus to the grey area and directed him to go and receive another bus from SLD Thermodor. Thomas Kamish then took 4007 after crashing 4124 (Refer to Exhibit 56 of Plaintiff's opposition/ summary judgement of 05/01/25). Kamish, who is of Jewish decent or faith, was shown grave so much so that Defendant's ATU Local 726 covered up the fact that he had an incident in the depot. Added to that Kamish had a bus operator as an assistant to back up the bus, when he brought the significant damage to the bus. Actions that were taken with regards to Kamish are contrary to

written policy and MTA/ NYCTA procedure. Defendants NYC Transit Authority's actions are violative of the CBA and the NYCT/ MTA DOB rules and regulation employee handbook. Plaintiff has proven that the determining factors of whether an employee is disciplined is determined by the protective classification he or she belongs to and whether the NYC Transit Authority Favors the protective classification and demographic groups that the MTA employee is apart of. An at-will employer loses its "at-will" privileges if the employer includes but is not limited to: (1) being in breach of contractual agreement/ Collective Bargaining Agreement (CBA) and (2) the inconsistent application of applying internal employee policy and procedures and the applying of said policies differently to individuals who belong to different protective classifications and demographic groups, that are not favored and disliked. As stated, Kamish should have been sent down for a "code" and then sent to Zarega for re-Training (Refer to Exhibit 16 of the rebuttal/ response to the NYC Transit Authority 08/24/23). Under Medical Assessments of the G-46, it says Post Accident#, FTA Post Accident#, Agency Post Accident # (Refer to Exhibit 16 of the rebuttal/ response to the NYC Transit Authority of 8/23/24). All boxes should have been checked. Kamish had an accident in the Depot to where there was significant damage to the bus, when he hit a fixed object. In addition, Kamish had a spotter outside of the bus to guide him while he was backing the bus up in reverse. Kamish, still incur an accident resulting in him crashing the bus into one of the walls of the Yukon Depot. Kamish did not meet the standards Satisfactorily of a bus operator by the standards of

DOB ("Department of Buses"), by the NYC Transit Authority ("Agency") and by the Federal Transit Administration ("FTA"). (Refer to Exhibit 56 Thomas, Kamish (1)-(8) of Plaintiff's opposition/ summary judgement of 05/01/25). Plaintiff was on restrictive duty from October 2016 until May 2017, from a baseless complaint from an unsubstantiated source to which the transit authority could not prove to be true. Plaintiff, who was Foundational African-American, African-American, Black, Gay and was diagnosed with PTSD, at the time was not involved in any vehicular collision or accident, when he was placed on restrictive duty for 8 months.

Other notable examples non- black non- homosexual NYCT personnel to which Defendants NYCT took favor to employees who are outside plaintiff protective classifications are Caucasian SLD Adriana Natale ("Natale") misused Defendant NYCTA's EZ pass and manipulated her timecard, which constitutes theft of wages/services and is immediate grounds for termination. (See Exhibit D of the rebuttal/ response to the NYC Transit Authority of 8/24/23). However, Defendant NYCTA simply demoted Natale and allowed her to retire three years after she was found guilty of the above violations. Evidently, Defendant NYCTA consistently grants immunity to non-Black, non-homosexual employees without severe penalties. Additionally, Defendant charged heterosexual non-African American NYCTA Bus Operator George Botts ("Botts"), who is also the Vice President of ATU Local 726, with theft of wages after it was discovered that he was manipulating his timecard to

conceal that he was leaving work earlier than scheduled. Botts was found guilty of misappropriation and misuse of NYCTA's EZ pass. The said action is Theft of services and wages and is ground immediate termination and are serious offenses. Both individuals are still employed with the New York City Transit Authority. The NYC Transit Authority has a long history with not holding their non-black non-homosexual employees accountable, as it pertains to their substandard performances as MTA/ NYCTA employee and personnel and them being in compliance with NYC Transit Authority policy and procedure.

There are a plethora of ways in which a bus operator can placed on restricted duty. Restricted duty is defined as any operator that is not able to perform his or her regulatory duties. (Refer to Exhibit I GSS Francis (1)(2) of the rebuttal/ response to the NYC Transit Authority of 8/24/23 and Plaintiff's opposition/ summary judgement of 04/17/25. (Refer to Exhibit 36 in the New York City Transit Department of Buses Rules & Regulations, Rule 35(c) 1-2 and Rule 35(d) of rebuttal/ response to the NYC Transit Authority of 8/24/23). Because Plaintiff was the only Black and Gay male gendered operator, Defendants want to say he was not restricted duty to single plaintiff out. Yet if Plaintiff was not on restricted duty Defendants would not have needed to send Plaintiff to the MAC to be reinstated let alone to attend Zarega. Charles Scott and the MAC rejected the G-46 and denied all service to determine if plaintiff was well enough (medically) for a fit-for-duty certificate, due to Defendants

failure to comply and failure to submit requisite documentation needed for plaintiff to be reinstated. This action is disparate treatment and discrimination but it is also disparate impact of discrimination. (Refer to Exhibit 16 of the rebuttal/ response to the NYC Transit Authority 8/24/23).

Plaintiff was on restricted duty. (Refer to Exhibit 10 of the rebuttal/ response to the NYC Transit Authority of 8/24/23). At the top of the Attendance Log it says SI Division Restricted Duty Daily Assignment Sheet Below on the same it says "Other Duties" which falls under the category of restricted duty. Yim, Steyert, Goldman, Ramos, Bledsoe (Plaintiff), Jimenez and DeSantis were all signing under the SI Division Restricted Duty Daily Assignment Sheet under "Other Duties". Other Duties is the specific Restricted Duty Daily Assignment that all male gendered bus operators were assigned to. There is a plethora of ways in which an operator can be placed on restricted duty. Restricted duty has to do with the prohibition of one being able to perform his/ her regulatory duty in their said safety-sensitive position—regardless of the circumstances —be it medical or non-medical.  During 2015 Plaintiff was bumped out of the Charleston Depot because he did not have the seniority to stay there and started operating out the Yukon Bus Depot. Plaintiff witnessed Locasio, Joseph 530025 on restricted duty that was due to non-medical issues. Peter Pappalardo See Exhibit 25 of the rebuttal/ response to the NYC Transit Authority of 08/24/23 was also on restricted duty between 2019-2020 his duties were not due to medical reasons but accidents. 956165 White Richard was also out on restricted duty for non-medical

reasons during 2020-2021. 700013 Pickett, Rodney was also on restricted duty during 2007. According to the New York Daily News/publication, the city bus driver was arrested on Staten Island, accused of grabbing a 16-year-old's crotch and threatening the boy with a knife, authorities said.

It was unclear how long Pickett and the boy have known each other and the nature of their relationship, but the two met while Pickett was working, sources said. The story was cited by contributor Peter N. Spencer of Silive.com

According to police sources, Pickett has been employed by the Metropolitan Transit Authority as a bus driver and has worked out of the Castleton bus depot for the last four or five years.

According to the Daily News,

Pickett was arraigned yesterday on charges including sex abuse, menacing and endangering the welfare of a child, and was released on $1,000 bail, officials said.

Mr. Pickett was unavailable for comment.

The sources original publication of this story was October 17, 2007 at 4:00 AM EDT. Shortly after Mr. Pickett arraignment and release from jail, Mr. Pickett returned to the NYC Transit Authority as a caretaker. He was in said position for an unspecified amount of time, before becoming reinstated as a bus operator. Mr. Pickett was not on restricted duty due to medically -related issues but by way of criminal charges.

Charges of second-degree menacing, third-degree sexual abuse, endangering the welfare of a child, forcible touching and criminal possession of a Weapon, see Exhibit

52 (1)-(4) of Plaintiff's opposition/ summary judgement. Mr. Pickett was employed, while Plaintiff was an Operator at the Yukon Depot. Mr. Pickett's designated depot was the Yukon depot as well. Mr. Pickett (currently) has entered his Twenty-second or Twenty- third year of service, with the City's leading transportation agency—the New York City Transit Authority and is still a bus operator to date.

The recommendation fails to acknowledge that Mr. Bledsoe was terminated due to his involvement of engaging in protected activity. It is against the law to terminate someone who has filed an complaint with the EEOC. Defendants took 140 days to terminate Plaintiff. Defendants received Plaintiff's complaints January 13, 2022. Plaintiff had not been terminated and was still able to bid for vacation time of 2022 and pick his work in 2022.

Courts denied Plaints the right to depose key individuals that he listed in his lawsuit against defendant that participated in the said discriminatory acts. Plaintiff was denied the right to call and depose witnesses that were willing to testify on behalf of Mr. Bledsoe. Plaintiff was told by Marutollo that [ he] needed to come up with a plausible reason for why he needed to depose the named individuals in his lawsuit. Judge Marutollo indicated that unless Plaintiff could give reason he would not be granted the right to depose. It was also indicated that deposition would be very expensive. Action of the judge are discriminatory crippling and incorrect. It is the right of the Plaintiff to decide whether or not he or she will forgo with deposing witnesses or name's

individual. Respectfully, Mr. Bledsoe becomes the judge in that that decision no one else. It is the absolute right of the plaintiffs to depose.

Recommendations fails to acknowledge that Mr. Bledsoe is still living with PTSD and has been diagnosed with chronic PTSD by psycho-therapist Francesco Aprigliano LMHC-D because of the traumatic events of January 29th and 30th 2021. The letter was dated 04/28/2025. The courts struck down all evidence and exhibits that was to go alongside my opposing summary judgement for defendants.

Summary Judgment should not be granted to the Defendants due to the face, Mr. Bledsoe has shown this court the this case and what he has stated case McDonnell Douglas Corp. V. Green 411 U.S. (1) That he does belong to a protected class, racial minority. (2)That he was qualified for the job. (3)He was also Discriminated against by the Defendants. (4) The plaintiff has shown there are disputed facts. This recommendation should not be considered as it is only written in favor of the Transit Authority despite all the evidence that has been struck down by the courts (refer to docket of 23-cv-00775)

Summary judgment is not appropriate unless there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986). To survive summary judgment, the nonmovant must merely show that "reasonable minds could differ as to the import of the evidence ... in the record." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir.1997) (internal quotation marks omitted).

These unsupported conclusions are not the proper way to show an issue of material fact. Hurt v. Stilman & Donlan, Inc., 35 Md. App. 644 (1977). It is apodictic that to defeat a motion for summary judgment, the opposing party must demonstrate there is a genuine dispute of material facts by offering facts that would be admissible in evidence. Beatty v. Trailmaster Prods., Inc., 330 Md. 726 (1993). Defendant here has offered no fact to refute Plaintiffs' motion for judgment. Mere allegations which do not show facts in detail and with precision and mere allusions to the existence of documents which may create a factual dispute are insufficient to prevent summary judgment. Id.

Based on Rule 56 of the Federal Rules of Civil Procedure, Defendant does not meet criteria for the granting of summary judgment because (1) there are too many material facts are in dispute, and (2) that the moving party does not deserves judgment as a matter of law.

1. Plaintiff requested the hard copy of Plaintiff's timesheet of January 30, 2021, to show the courts that Plaintiff was never operating bus 8577. The Operation of bus 8577 was on January 29, 2021 only.

2. Plaintiff requested the original hard copy of the vacation day "VAD" book to show the entries, as it listed Plaintiff's name, pass number and the word "restricted".

3. Plaintiff requested the date of filing, handling and findings of the internal EEO with the Department of Diversity and Civil Rights ("DDCR"). Plaintiff asked for the findings of Michael J. Gardner Chief Diversity and Inclusion Officer and Janno Leiber CEO and President of the MTA and NYCTA.

4. Plaintiff requested the camera footage of January 29, 2021 and January 30, 2021.

5. Plaintiff requested the fit-for-duty that medically approved to partake in the re-certifications and re-qualifications on September 20, 2021 and to grant him attendance at Zarega on September 21, 2021. Plaintiff requested the completed Medical Examiner's Certificate ("MSCA 5876/ MEC") certifying that Plaintiff met federal standards as per FMCSA and USDOT to operate commercial vehicles. Representing attorneys could not produce said documents because plaintiff was never medically cleared and did not achieve/ obtain medical clearance the obtaining and achieve of a fit-for-duty certificate and therefore could obtain a medical examiner's certificate that would allow for him to part-take in re-qualifications and re-certifications and allow Plaintiff to operate the City's commercial vehicles (buses ) on the road , making in compliance of Federal US Transportation and State laws. 49-CFR 341.41 49-CFR 341.49.

Anthony Bledsoe is a Foundational African- American that is a part of the LQBTQ community and has been diagnosed with chronic PTSD from the traumatic events of January 29th and 30th of 2021. Mr. Bledsoe was denied the right to depose. The courts system is a system that deals with deal of unfairness. Mr Bledsoe's personal file with the courts has been filed with language that extremely dangerous and untruthful. It is language that demonizes plaintiff and characterizes Plaintiff as a man that he is not. Plaintiff has been frightened and hurt by the court language in describing him and hurt by its fascination and dedication in rendering a decision that is unfavorable and undeserving to him. Plaintiff has undoubtedly proven that his lawsuit and claims against the New York City Transit Authority are with merit. Plaintiffs went as far as to submit articles of lawsuits settled by the MTA to show their long—standing of discriminatory and disgusting practices, where the MTA had to pay 1.2M to Black and Hispanic MTA police officers (refer to Exhibit 45). Dr. Martin Luther King Jr. is a noble peace prize winner and is the first man in the western hemisphere to receive a noble peace prize for his accomplishments in civil rights and his non-violence approach to civil liberties and equalities. Out of his accomplishments came the civil rights movement. It achieved pivotal legislative gains in the Civil Rights Act of 1964, the Voting Rights Act of 1965, and the Fair Housing Act of 1968. Enrique Tarrio (who is Cuban) was sentenced to 22 years of prison on seditious conspiracy and other related charges to the US capitol breach.

He is guilty of waging war against and on our democratic republic and democracy. The African- American is the most patriotic and prolific man on this planet and of[ this] country. No body of government can ever dispute or argue that. Coleman Domingo was praised for his Oscar worthy and nominated performance of his portrait of Rustin (2023). Bayard Rustin was an American political activist and prominent leader in social movements for civil rights, socialism, nonviolence, and gay rights. Rustin was the principal organizer of the March on Washington for Jobs and Freedom in 1963. It is very easy to prosecute (unjustifiably) the foundational African-American but very hard to vendicate him. The birthplace of civil rights is within the Foundational African-American. It starts with him. We raise the level of difficulty for a Foundational -African- American, in efforts of receiving justice and favorable decisions from the court, when we should be raising the level of humanity and morality of man. It is for the court to educate and demonstrate through law and its writings that there is no race, no organization,  no body of people —White, Green, Hispanic— or in between, that will ever live,  that has lived or that is to live,  that will surpass rival or eclipse that of the contribution of the foundational African-American. It is for the courts to ensure the equal application to justice as well. If your approach to law is colorless— you cannot see color. If you cannot color, you cannot see racism and discrimination. That is problematic and dangerous. Lady Justice is said to be blindfolded holding the

sword in one hand and the scale in the other. The holding of the sword and scales symbolizes legal and fair judgment, with the scales representing a balanced weighing of facts and evidence, and the sword symbolizing the authority and power to punish injustice. And yet she blind, she has a "talent" for spotting the Foundational African- American unjustly and unfairly. Plaintiffs in his many writing to the court has expressed concern in that in most cases judges' rule with authority masked by prejudice. Anthony Bledsoe was denied the right to depose and to bring forth witnesses that could bring crucial testimony. The courts have position itself not grant Mr. Bledsoe a trail, which is supported by the Seventh Amendment of the US constitution. Yet a Kyle Rittenhouse drove one county to an area to which he did not live in and Rittenhouse used a [Smith & Wesson M&P 15 rifle](#), a type of AR-15-style semi-automatic rifle, to shoot three men during the [2020 Kenosha protests](#), fatally killing two of them, who were marching in solidarity and with respect to killing of Jacob Blake and the senseless killing of Black men. The tears of non- blacks, White and White presenting Jews (of European decent) will alter and trump the wheel of justice. To console him the court made an unprecedented move and awarded Rittenhouse the right to select his juror that would cast his fate. To add insult to injury, the courts rewarded Rittenhouse his freedom.  A trail is necessary and needed, for Anthony Bledsoe who has demonstrated through documentary evidence and through the video

recordings that he has supplied to the court as evidentiary support, that a trail— if granted would undoubtedly result in a favorable decision in favor of Plaintiff. For reasons already aforementioned, Plaintiff Passionately Objects to the recommendation of Magistrate Judge Marutollo.

Respectfully submitted,

Anthony Bledsoe